**LONNIE LEE TALLEY v. THE STATE OF FLORIDA**

36 So. (2nd) 201                          June Term, 1948
June 18, 1948                                  En Banc
Rehearing denied July 20, 1948

594

*A. W. Graessle, Jr.,* for appellant.

*J. Tom Watson,* Attorney General, and *Ernest W. Welch,* Assistant Attorney General, for appellee.

CHAPMAN, J.:

The appellant, Lonnie Lee Talley, was indicted by a grand jury of Duval County, Florida, for the crime of rape alleged to have been committed in said County on July 22, 1947. On September 22, 1947, he was placed upon trial and a jury, after hearing the evidence of the parties and instructions of the Court, rendered a verdict of guilty as charged. A motion for a new trial was made and by the trial court denied, when the appellant was adjudged guilty of said crime and the death penalty imposed by an appropriate sentence. An appeal has been perfected here.

The testimony adduced discloses in substance that the offense was committed about 2:00 or 2:30 P. M. on July 22, 1947, in the rural settlement of the Arlington section of Duval

County, about seven or eight miles distant from the court house in Jacksonville, shortly after the prosecutrix, a housewife, had completed the family washing, returned to her home and was rocking her two year old baby to sleep sitting on the front porch of her rural home. The appellant, driving a 1940 or 1941 Chevrolet truck, passed the home and asked direction to the B & M Poultry Farm, and after being advised that she did not know the location of the poultry farm the appellant drove away and returned some few minutes thereafter and stopped his truck for the second time near the prosecutrix's home and made inquiries of her about a road branching off from the one he had been traveling. He asked for a glass of water and was directed to go to the pump in the rear of the house. He was told by the prosecutrix that the husband was away from home and she was alone with her baby. The pump had to be primed and she gave the appellant a glass of water and after handing it to him turned her back to return when the appellant attacked her, and after considerable struggling between them, the appellant threw her upon a bed and accomplished his purpose.

The prosecutrix attempted to get the tag number on the truck but found it bent from the top to the bottom and she could not read the number. The officers were called and she gave them a description of the assailant and of the truck driven by him, which resulted in his arrest by a policeman of the City of Jacksonville on the following Friday, July 25, 1947, when driving the truck about said city. He was placed in a line of about six men by the officers and the prosecutrix viewed each of the six men when in the line and pointed out the appellant as her assailant. The appellant was identified by several others when in line but on separate occasions. The truck was identified as the one driven by the appellant when the prosecutrix was assaulted. It was the property of Excelsior Mills Corporation, 118 East 14th Street, Jacksonville, with whom the appellant had been employed as a truck driver and other duties since the Fall of 1946. The appellant's defense in the court below was that of an alibi. He was 24 years of age, married and had about 10 or 12 months' overseas duty in World War II.

It appears by the record that the appellant was at the home of Mrs. Roxie Cason in the Arlington section on the afternoon of July 22, 1947, and asked for directions to the B & M Poultry Farm and later got from her a pair of pliers with which to work on his truck and Mrs. Cason became frightened at the appellant's conduct and ran back in her home and closed the door. The truck she described as driven by the appellant was a Chevrolet green panel truck, 1939, 1940, or 1941 model. It is not disputed that the truck was the property of Excelsior Mills Corporation and the appellant was hired to drive the truck in July, 1947. The witness identified the appellant in the line at the jail as the driver of the truck in the Arlington section on the afternoon the alleged crime was committed.

The State produced the second lady witness, who lived between Moncrief and Rebault Drive sections of the City of Jacksonville on July 17, 1947. She testified that the appellant passed her home on the afternoon of July 17, 1947, driving this Chevrolet truck and stopped in front of the home and asked the witness for a glass of water and the witness got the water and took it to him on the front porch. When she opened the door to give him the water he forced the door open and went into the home and made several efforts to get hold of her but she fought him off and screamed for help and the appellant became frightened and left. The witness identified the appellant in the line at the jail as the driver of the truck and the one who attacked her in her home on the afternoon of July 17, 1947.

The third lady witness for the State testified that about 4:30 or 5:00 o'clock P. M., July 23, 1947, near her home on May Street in the City of Jacksonville the appellant was sitting in the Chevrolet truck and as the witness passed the truck—then parked along the sidewalk—he made an indecent proposal to her and then drove away in the truck. The witness identified the appellant in a line of six men at the jail on the following Friday morning, July 25, 1947.

The fourth lady witness for the State testified that the appellant, on the 24th day of July, 1947, when driving the 1939 Chevrolet truck down Canal Street in a thinly populated sec-

tion of the city, accosted her and made an indecent proposal to her and some advances but she was successful in fighting him off, when the appellant drove away in the truck. The witness later identified her assailant in the line at the jail. The fifth lady witness called by the State testified that the appellant attacked her near her home and was driving the 1939 Chevrolet truck at the time. She identified the appellant when seen in the line at the jail. Thus from the 17th of July until the 24th of July, 1947, it appears from the testimony that five assaults were made by the defendant-appellant on women in the Jacksonville area.

It appears from the record that the defendant on approaching a possible victim would ask her for a glass of water, or request information about the road, or ask for pliers or some other tool feigned to be needed in the adjustment of the motor or truck, with the usual question, "Is your husband at home?" One witness saw him fold the truck tag to prevent her getting the tag number and the prosecutrix in the case at bar made an effort to get the tag number of the truck driven by the defendant at the time she was assaulted by the defendant, but found the tag folded, which prevented her obtaining it. From this testimony it is reasonable to infer as follows: (a) that the defendant-appellant intended to criminally assault each of his victims; (b) his scheme, plan or method of approaching each of his possible victims are shown to be similar to those employed when contacting the prosecutrix in the case at bar; (c) the identity of the defendant is established by height, color, weight, wearing apparel and the 1939 or 1940 Chevrolet truck driven on the occasion of each attack.

Counsel for the defendant below, during the progress of the trial, objected to the admission into evidence of the testimony of attacks alleged to have been made on other women supra on the ground that each of the alleged attacks was a separate and wholly independent offense for which the accused was not then on trial and it was impossible for him to defend against these collateral offenses when on trial under the present indictment and that the testimony was highly prejudicial. It is contended on this appeal that the judgment should be reversed because of the admission of the challenged

testimony. It is well established law that in a prosecution for a particular crime, evidence which in any manner shows or tends to show the accused has committed another crime wholly independent of that for which he is on trial, even though it is a crime of some other sort, is irrelevant and inadmissible. Coston v. State, 139 Fla. 250, 190 So. 520, and similar cases. The trial court recognized the cited rule but held that a well recognized exception thereto was controlling.

The authorities recognized a well established exception to the rule enunciated in Coston v. State, supra, but point out that evidence tending to show the commission of other crimes requires a close scrutiny into its relevancy. Whether it tends to exculpate or convict, if it is relevant, it must bear a certain relation to the crime charged so as to connect the two either as parts of one transaction, explains or defines the character of the act charged as to motive or intention with which the act charged was committed, then the evidence is admissible. Any evidence tending to throw light upon the character of the act under investigation is admissible, such as motive, intent, absence of mistake, a common scheme embracing the commission of two or more crimes so related to each other that the proof of one tends to establish the other and identify the person charged with the commission of the crime on trial. See Ryan v. State, 83 Fla. 610, 92 So. 571; Wallace v. State, 41 Fla. 547, 26 So. 713; Killins v. State, 28 Fla. 313, 9 So. 711; Thomas v. State, 132 Fla. 78, 181 So. 337; Kennedy v. State, 140 Fla. 125, 191 So. 193.

The rule enunciated by this Court in Ryan v. State, supra, and similar cases, is sustained in other jurisdictions. Evidence of an independent and separate crime, while inadmissible to prove the guilt of one on trial for a criminal offense, is admissible where such evidence tends to aid in identifying the accused as the person who committed the particular crime under investigation. Wharton's Criminal Evidence (11th Ed.), Vol. 1, p. 507, par. 348.

In many criminal offenses, intent is the essence of the crime, and where not established, the prosecution fails. In crimes *malum in se,* intent is presumed, but where it is not a matter of presumption, it must be proved as any other fact.

Where intent is material, the act, declarations and conduct of the accused are revelant to show that intent. Hence, evidence of collateral offenses is admissible on the trial of the main charge to prove intent. To be admissible as relevant, such offenses need not be exactly concurrent. If they are within such time or show such relation to the main charge as to make connections obvious, such offenses are admissible to show intent. Evidence of collateral offenses which is inseparably interwoven with the offense charged and which also show intent is admissible. Wharton's Criminal Evidence, Vol. 1 (11th Ed.), pp. 516-520, par. 350.

'Evidence of the motive which suggests the doing of the act constituting the crime charged is always admissible and this is true even though such evidence tends to show the commission of another crime, or constitutes proof of the commission of another crime, provided the time which has elapsed between the crime charged and the offense concerning which the testimony is offered is not too remote. Evidence of similar acts affords the surest basis for inference that the crime charged was committed by the accused. Wharton's Criminal Evidence, Vol. 1 (11th Ed.) pp. 523-527, par. 351.

Evidence of other crimes may be admitted when it tends to establish a common scheme or plan embracing the commission of a series of crimes so related to each other that proof of one tends to prove the other, and to show the defendant's guilt of the crime charged. Subsequent as well as prior collateral offenses can be put in evidence and from such system, identity or intent can often be shown. Like crimes, committed against the same class of persons, at about the same time, tend to show the same general design and evidence of the same as relevant and may lead to proof of identity. Wharton's Criminal Evidence, Vol. 1 (11th Ed.), pp. 527-532, par. 352. See 20 Am. Jur. 289-298, par. 310, 311, 312, 313, 314 and 315; Robinson v. State, 243 Ala. 684, 11 So. (2nd) 732; Daniels v. State, 243 Ala. 675, 11 So. (2nd) 756; Barnett v. State of Ohio, 104 Ohio 298, 135 N.E. 647, 27 A.L.R. 351; Merritt v. State of Georgia, 168 Ga. 753, 149 S.E. 46.

The trial court gave special instructions to the jury on the point in issue viz:

"There has been permitted to go before you in the trial of this case certain evidence showing or tending to show, if you find such evidence to be true, that the defendant committed certain acts against and upon other women than Sadie Loise Pipkin, the prosecutrix named in the indictment in this case. The defendant is not charged in this case with the commission of any act or offense against or upon any person or persons other than the said Sadie Loise Pipkin, and it is upon the charge that he raped the said Sadie Loise Pipkin, as set forth in the indictment in this case, and upon such charge alone that you are sworn to try this defendant. Such evidence with respect to this defendant and said other women, if you believe such evidence to be true, must be considered by you only upon the question of the defendant's identity and his plan or design if you find from the evidence that he had a plan or design. The court instructs you that you must consider all the evidence in this case solely in connection with the charge on which the defendant is being tried and no other."

We hold the assignment challenging its propriety is without merit.

Counsel for appellant contends that the trial court erred in refusing the defendant-appellant's counsel the opening and closing arguments to the jury under the provisions of Section 918.09, F.S.A.; Crosby v. State, 90 Florida 381, 106 So. 741, and Haddock v. State, 121 Fla. 167, 163 So. 482. We have studied the record and re-examined the authorities cited in light of the contention made. It is true that the defendant below adduced no witnesses other than himself, but did offer and there was received in his behalf a photograph which tended to prove a fact in issue, i. e. whether or not the defendant possessed a mustache on the date of arrest on July 25, 1947, as bearing on the question of his identity. It is our conclusion that the photograph was testimony within the meaning of Section 918.09, supra, and our former adjudications. The withdrawal thereof as subsequently requested by counsel so as not to come within the provisions of Section 918.09, supra, was a matter addressed to the sound discretion of the trial court and it has not been shown that the trial court abused this discretion.

The defense below was that of an alibi and the evidence adduced in support thereof has been carefully considered. The prosecutrix testified that the crime was committed around 2:00 or 2:30 P. M., July 22, 1947, at her home in the Arlington section of Duval County, Florida. Mrs. Roxie Cason testified that she saw the defendant in the Arlington Section and a short distance from the prosecutrix's home about the hour of the alleged crime. Mr. Vallerchamp, an employee of Excelsior Mills Corporation, testified that he sent the defendant in the truck to deliver at a house he was constructing in the Arlington section some materials and the defendant returned to the place of business of the Excelsior Mills Corporation "shortly after four or four-thirty" July 22, 1947. We find ample evidence in the record to sustain the verdict of the jury.

The judgment of the lower court is affirmed.

THOMAS, C. J., TERRELL, ADAMS, SEBRING and BARNS, J.J. concur.