114 So.2d 684 (1959)
Norman J. MACKIEWICZ, Appellant,
v.
STATE of Florida, Appellee.
Supreme Court of Florida.
September 11, 1959.
Rehearing Denied October 19, 1959.
*686 Herman Methfessel and Alvin N. Weinstein, Miami, for appellant.
Richard W. Ervin, Atty. Gen., and Reeves Bowen, Asst. Atty. Gen., for appellee.
*687 ROBERTS, Justice.
This is an appeal from a verdict and judgment convicting appellant of murder in the first degree without recommendation of mercy. He challenges here the sufficiency of the evidence to support the judgment of conviction and, in addition, assigns as error the admission of certain evidence and the granting or denial of certain instructions, referred to hereafter.
The appellant offered no evidence in his defense. From the evidence adduced by the State the jury was entitled to find that the appellant shot and killed Lt. Staab, a police officer, during an altercation occurring in the following manner: Lt. Staab and Sgt. Stahmer, police officers of Bal Harbour, were assigned to work at the Americana Hotel in Miami Beach on the night of October 30, 1957. Each of them was dressed in civilian clothes. They left the Americana at about 2:30 a.m., going from there to the Balmoral Hotel, which is next door to the Americana. While still on the outside of the Balmoral they noticed a person looking out through a small glass window in a fire exit door of that hotel. Stahmer and Staab separated, Stahmer walking toward the fire exit door and Staab going in another direction. Stahmer entered the hotel and as he was walking down the hall he saw the appellant walking toward him. When he was about six feet away from the appellant, Stahmer pulled his badge out of his pocket, exhibited it to the appellant, and said, "I am a police officer. What are you doing?" The appellant's response was to draw a gun  a .32-caliber automatic  and to motion Stahmer to follow him toward the end of the hall. The jury could have inferred that the appellant's gun was already loaded, cocked and ready to fire. When they reached the stair well door the appellant stopped and said, "All right. In here." As they entered the stair well, Stahmer noticed that the appellant had momentarily turned the gun away from him, so he grabbed the appellant's arm. A struggle ensued, during which the gun went off harmlessly. The struggle carried the appellant and Stahmer back into the hall. First appellant, then Stahmer, tripped and fell on the floor of the hallway.
At the time of Lt. Staab's unfortunate entrance upon the scene, Stahmer was on his back on the floor, appellant was standing near Stahmer, pointing the gun at him, and had just warned Stahmer not to "try anything", to which Stahmer had replied, "All right. Don't shoot." Stahmer had not, so far, taken his gun from its holster. At this point Staab came around the corner at the end of the hall with his gun in his hand. When Stahmer saw that appellant had noticed Staab, Stahmer yelled, "Get him, Bob." As Stahmer yelled this, the appellant brought his arm up across his body and fired at Staab from a position near his hip. An instant later Staab's gun also went off. There was medical testimony that appellant's bullet damaged the parts of Staab's brain that control the eyesight, so that his shot could not have been an aimed conscious shot. There was no evidence that it hit the appellant. After Stahmer saw that Staab had been hit, he kicked the appellant on the arm while the latter was standing there, and the gun went against the appellant's side and he fired again. As Stahmer started getting to his feet, the appellant fired again in the direction of Stahmer. Then the appellant started running with Stahmer in pursuit. Stahmer fired several shots at appellant, but the appellant made his escape. He was, however, apprehended about an hour later.
Appellant's cell-mate in the Dade County jail after his apprehension, one Ferguson, was a state's witness. He testified that appellant discussed the affray at the Balmoral with him and told him that he, appellant, was in the Balmoral to rob the cashier. Ferguson further related the appellant's statements to him, as follows:
"As he [appellant] was going down the hall to approach the lobby where this cashier was, this man came up *688 the hall. It was about two-thirty in the morning, and he said, `I am a police officer. What are you doing in the hotel?' and he said that he thought they were on to him for robbing the Fontainebleau Hotel, so he started tussling with the man, and he said he was an officer, and he went down, and in the course of this struggle the gun that he had was discharged.
"He pulled the gun and this gun went off. So, he overpowered this policeman and he was down, and as he started to get up, another man came around the hall  from around the corner, and he stated that he `took aim at him and shot him right between the eyes, and he went down like a champ,' and then he said he got up on his feet and he turned around and looked at the other fellow on the floor and he shot at him three times and `the son-of-a-bitch kept moving, or I would have hit him, because he was the only witness to the thing,' and then he ran out of the hotel and got in his car and got caught in the two roadblocks."
On cross-examination Ferguson said he was not sure that the appellant told him he "took aim" but reiterated that appellant said he shot "the fellow coming around the corner between the eyes".
Other state's witnesses identified appellant as the person who had robbed some guests at the Fountainebleau Hotel on the night of October 26th, just five days prior to the shooting of Lt. Staab. Defense counsel objected vigorously during the trial to the admission of this testimony, as well as that of Ferguson relating to the Fountainebleau robbery, recounted above, on the ground that evidence of an unconnected, independent crime was not admissible against the appellant. The trial judge's admission of such evidence was assigned as error, and it is here contended that such evidence is not within any of the exceptions to the general rule of inadmissibility of such evidence allegedly adhered to by this court in many cases cited. We have some doubt that this contention could be sustained, even under the old rule relied upon by appellant, Cf. McVeigh v. State, Fla. 1954, 73 So.2d 694, 696; Talley v. State, 1948, 160 Fla. 593, 36 So.2d 201, 204. This rule has, however, been recently restated by this court in an opinion by Mr. Justice Thornal in Williams v. State, Fla., 110 So.2d 654, 663. In that opinion the rule was analyzed, the previous decisions of this court were reviewed, and the following rule was adopted for the future guidance of the bench and bar:
"* * * evidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion. This rule we hold applies to relevant similar fact evidence illustrated by that in the case at bar even though it points to the commission of another crime."
Earlier in the opinion it was said: "Our view of the proper rule is that relevant evidence will not be excluded merely because it relates to similar facts which point to the commission of a separate crime. The test of admissibility is relevancy. The test of inadmissibility is a lack of relevancy."
It is clear that Ferguson's testimony and the evidence of the Fountainebleau robbery were relevant to material facts in issue here, that is, the motive and intent of the appellant in shooting Staab. Such evidence showed that his motive for shooting Lt. Staab was to avoid being taken into custody for a robbery committed by him just five days previously and was relevant to the question of whether appellant was guilty of murder in the first degree, as charged in the indictment, or some lesser degree of homicide. It was thus clearly admissible under the rule of Williams v. State, supra.
Applying this test of relevancy to the other evidence admitted by the trial judge over the objection of counsel for the appellant, the admission of which is assigned *689 as error here, it must be held that no reversible error has been made to appear. The evidence that a 1957 Ford Sedan with a 1E license tag was stolen from a residence near the Balmoral shortly after the time of the shooting there, when considered in the light of the testimony of the officer who, in response to a radio call, apprehended appellant while he was driving a car of that description, related to the appellant's flight from the vicinity of the crime, which is "a circumstance of guilt to be considered by the jury under appropriate instructions." Noeling v. State, Fla. 1949, 40 So.2d 120, 121. The discrepancy between the officer's description of the car as two-door and that of the custodian of the stolen car, a rental car, as four-door, was not called to the attention of the trial judge at the time these witnesses testified nor at the close of the State's case, at which time counsel for the appellant made an oral motion to strike the testimony as to the theft of the car on the ground that the State failed to prove that the car driven by appellant when he was arrested was the stolen car, and also an oral motion for mistrial because of the admission of this and other evidence as to other crimes committed by appellant. We have no doubt that the trial judge would have stricken the evidence relating to the theft of the car if this discrepancy had been called to his attention and the State had been unable to correct the discrepancy. In these circumstances the appellant's contention that the trial judge committed reversible error in admitting and refusing to strike the evidence as to the theft of the car cannot be sustained.
It is conceded by counsel for the appellant that the State was entitled to show that the appellant escaped from the Dade County jail, and rightly so, since it is well settled that evidence that a suspected person in any manner endeavors to escape or evade a threatened prosecution, by flight, concealment, resistance to lawful arrest, or other ex post facto indications of a desire to evade prosecution, is admissible against the accused, the relevance of such evidence being based on the consciousness of guilt inferred from such actions. See Blackwell v. State, 1920, 79 Fla. 709, 86 So. 224, 15 A.L.R. 465; Cortes v. State, 1938, 135 Fla. 589, 185 So. 323, 327; Daniels v. State, Fla. 1959, 108 So.2d 755.
It is contended on behalf of appellant, however, that the State went too far in showing the details of the escape and in exhibiting to the jury the rope made from mattress covers down which the appellant and other prisoners slid from the twenty-third to the seventeenth floor of the Dade County jail. There can be no doubt that the manner in which an arrest is resisted or an escape is effected has some bearing on the weight to be given by the jury to such evidence in reaching its decision as to the guilt or innocence of the accused, and we know of no case in which such evidence has been excluded. See Wharton's Criminal Evidence, 12 Ed., § 206, p. 424; cf. Carr v. State, 1903, 45 Fla. 11, 34 So. 892. Accordingly, the appellant's contention in this respect cannot be sustained.
The appellant also charges that reversible error was committed when the State's witness, Ferguson, in response to an inquiry directed to him by the trial judge as to the time of his conversation with the appellant in the Dade County jail, said:
"Well, they brought him in in the morning, and he thought he recognized me, that he had known me from some place else, and he asked me if I had ever been in San Quentin, and I told him, `Yes, I have.'"
Ferguson's reply was promptly stricken upon motion of the appellant. Moreover, on cross-examination of Ferguson, counsel for the appellant asked Ferguson, "You said he picked you out of all the people in the jail?", to which Ferguson replied, "He started talking to me and asked me if I had ever been in San Quentin." Counsel for appellant did not object to this answer nor move to strike it or challenge it in any way. It must, therefore, be deemed to have been admitted into evidence by consent.
*690 As one of his points involved on the appeal, counsel for appellant states that "It was error for the court to allow the state attorney to introduce evidence of the defendant's bad character where the defendant had not placed his good character in issue." Under this point it is argued that the admission of evidence showing the use of an alias by the appellant, and evidence that appellant had purchased in Las Vegas, Nevada, the gun found on him at the time of the arrest, together with the evidence of the other crimes referred to above and appellant's escape from jail, constituted reversible error. The testimony as to the purchase of the gun was admissible to show the falsity of the appellant's statement as to how and when he came into possession of the gun. The evidence that appellant registered under an assumed name at a Miami Hotel on the night preceding the shooting and refused to re-register on the night of the shooting, although paying for his room, was not objected to by counsel for the appellant. The only objection came when the registration book was offered in evidence, which was objected to on the ground that there had been no proper predicate. This objection was properly overruled; and it is clear that the evidence was not so prejudicial as to require this court to hold the trial judge in error for failing to exclude it, sua sponte, on the ground now urged, nor to hold that its admission constituted reversible error, even though its relevancy and probative value may have been slight.
The appellant also challenges here the giving of instructions Nos. 3 and 6 requested by the State and the denial of appellant's requested instruction No. 5.
In this connection it should be noted that Rule 6.7, subd. g of the Florida Appellate Rules, 31 F.S.A. relating to criminal appeals provides as follows:
"Formal exceptions to rulings, orders or charges of the court are not necessary to support the assignments or cross assignments of error provided for by these rules; but for all purposes for which an exception has ever been necessary, it is sufficient that a party, at the time that the ruling, order, or charge of the court is made, or sought, makes known to the court the action which he or it desires the court to take, or his or its objection to the action of the court and his or its grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection shall not thereafter prejudice him." (Emphasis added.)
Under Rule 6.16 Ibid., the appellant court is required to "review all instructions to which an objection was made and which are alleged as a ground of appeal * * *. The court may also in its discretion, if it deems the interests of justice to require, review any other things said or done in the cause which appear in the appeal record, including instructions to the jury."
Although he had ample opportunity to do so and did, in fact, object to other instructions requested by the state, counsel for the appellant made no objection whatsoever to the State's requested instruction No. 3. The only objection made to the State's requested instruction No. 6 was that it was "too general and too indefinite". It is now contended that instruction No. 3 was not predicated upon the evidence and that instruction No. 6 was not a correct statement of the law nor predicated upon the evidence. We have, however, considered both instructions and have concluded that, as to instruction No. 3, the evidence was sufficient to justify such charge. As to instruction No. 6, appellant cannot be heard to say that it was not supported by the evidence, since one of his own requested charges, No. 2, given by the trial judge, related to the same matter; and, as pointed out by the trial judge in ruling on defense counsel's objection to the State's requested instruction No. 6, any uncertainty in the State's requested charge was clarified by the appellant's requested charge No. 2, given immediately after the State's instruction No. 6. We find *691 no reversible error in the giving of the State's requested instructions Nos. 3 and 6.
As to the alleged error in refusing to give the appellant's requested charge No. 5, this charge was covered by the general charge, so we find no error in its denial.
Counsel for the appellant also contends that the evidence was insufficient to support a verdict of murder in the first degree. He argues that appellant had many opportunities to shoot Sgt. Stahmer, yet did not do so; that appellant did not know that Lt. Staab was a police officer, since he was in plain clothes, and thus could not have been motivated by a desire to escape capture, even at the cost of taking a life; that the evidence showed that appellant fired at Staab from his hip, without taking aim, so that there was no evidence that appellant intended to kill Staab; that appellant's gun still contained three live shells at the time of his capture, so that he could have killed Stahmer also, if his intention had been as contended by the State.
No useful purpose would be served in re-stating the evidence recounted above. It suffices to say that the jury had the right to find that, even if appellant did not known that Lt. Staab was a police officer, he knew that Staab was coming to the rescue of Sgt. Stahmer, whom he knew to be a police officer; that, until Staab's arrival on the scene, the appellant had the situation well in control so that there was no necessity to shoot Sgt. Stahmer; and that appellant intended to kill Staab even though he fired at Staab from the hip without bringing the gun up and pointing at him. The fact that only an instant elapsed between appellant's discovery of Staab and the fatal shot does not negative a premeditated design to effect his death. "`It is not necessary that such purpose and intent to kill another human being shall exist for any particular length of time; it is sufficient if between the formation of the purpose or intent to kill and the act of killing there elapses enough time that the slayer is fully conscious of a deliberate purpose and intent to kill another human being * * *.'" Daniels v. State, Fla. 1959, 108 So.2d 755, 759, quoting Snipes v. State, Fla. 1944, 154 Fla. 262, 17 So.2d 93, 97. Nor are we impressed by the fact that appellant's gun contained live ammunition at the time of his capture. There was evidence from which the jury could have found that appellant tried at least once to shoot Stahmer before hastily departing from the premises. And, in the circumstances shown by this record, the fact that appellant did not exhaust his supply of ammunition against Stahmer does not, in our opinion, conclusively negative a premeditated design to kill Staab. We conclude, therefore, that this issue was properly submitted to and resolved by the jury.
Finding no reversible error and that the evidence was sufficient to support the verdict and judgment of murder in the first degree, the judgment appealed from should be and it is hereby
Affirmed.
THOMAS, C.J., and TERRELL, DREW and THORNAL, JJ., concur.