158 So.2d 803 (1963)
Effie L. NORRIS, Appellant,
v.
STATE of Florida, Appellee.
No. E-107.
District Court of Appeal of Florida. First District.
December 5, 1963.
Rehearing Denied January 8, 1964.
Frank G. Howatt; Jacksonville Beach, and Walter G. Arnold, Jacksonville, for appellant.
Richard W. Ervin, Atty. Gen., and James G. Mahorner, Asst. Atty. Gen., for appellee.
STURGIS, Chief Judge.
The appellant was tried by jury and convicted of murder in the first degree, allegedly *804 committed June 3, 1960, upon the person of one Walter Cleveland Merrill by administering to him a deadly poison, arsenic oxide.
The state furnished a bill of particulars to the defendant reflecting that the poison was administered to the deceased by mouth on divers days and dates at the East Coast Hospital, St. Augustine, Florida, and No. 8 Sanchez Avenue, St. Augustine, Florida. The trial took place over the period from October 15, 1962, until October 18, 1962, inclusive. Defendant did not present any evidence in rebuttal of the state's case.
The trial court denied defendant's motion for a new trial which, inter alia, challenged the sufficiency of the evidence to support the verdict and the admission in evidence of testimony as to the arsenic content found in the exhumed bodies of one Earl D. Norris, a former husband of the defendant, who died January 13, 1952, and one Vinton Myles Pace, a person with whom defendant became closely associated following her husband's death, Pace having died March 23, 1953.
The critical point of law for determination is whether it was error to receive in evidence over defendant's objection testimony pertaining to the deaths of Pace and Norris and the arsenic content of their bodies, having in mind that the defendant was not shown to be in any manner connected therewith other than that she was in such position that she had an opportunity, if she so desired, to administer such poison to them. It is contended that such evidence was irrelevant to prove any of the allegations of the indictment and is highly prejudicial. The point is well taken and we reverse for a new trial. Other points of law argued and relied on by appellant are either without merit or, in view of our conclusion, unnecessary to be treated on this appeal.
The state established that Walter Cleveland Merrill, 75 years of age, died June 3, 1960, in St. Johns County, Florida, from arsenic oxide poison administered to him orally. There is no competent evidence, direct or circumstantial, affording a basis from which to conclude that the defendant criminally participated in the deaths of her husband, Norris, or of her later acquaintance, companion or employer, Pace, or that she was in any manner connected with the fact that at time of death their bodies contained lethal quantities of arsenic oxide.
In the landmark case of Williams v. State, 110 So.2d 654 (Fla. 1959), our supreme court, speaking through Thornal, J., describes the so-called similar fact evidence rule as one relating to the admissibility rather than the exclusion of evidence which tends to reveal the commission of a collateral crime, and emphasized that the question of irrelevancy of this type of evidence should be cautiously scrutinized before it is determined to be admissible.
The test of admissibility of similar fact evidence is relevancy of the collateral crime to the crime charged or to the facts out of which resulted the crime charged. Griffin v. State, 124 So.2d 38 (Fla.App. 1960). Such evidence is admissible only if it casts light upon the character of the act under investigation by showing motive, intent, absence of mistake, common scheme, identity, or a system of general pattern of criminality. Williams v. State, 143 So.2d 484 (Fla.); Talley v. State, 160 Fla. 593, 36 So.2d 201; Suarez v. State, 95 Fla. 42, 115 So. 519. Evidence of a collateral crime is inadmissible unless accompanied by evidence connecting the defendant therewith. Weiss v. State, 124 So.2d 528 (Fla.App.); Griffin v. State, supra; Padgett v. State, 53 So.2d 106 (Fla.); Findley v. State, 124 Fla. 447, 168 So. 544; Suarez v. State, supra.
Where the evidence is offered to show a similar plan, scheme or design, the same must be shown in connection with the offense for which the defendant is on trial, and it must also be shown that the same or a substantially similar plan, scheme or design occurs as an incident to the collateral *805 offense with which the defendant is likewise connected. As simply stated in Padgett v. State, supra, there must be "such similarity of method or manner of accomplishment as to justify the admission of testimony regarding it."
The challenged evidence in this case falls short of that standard. The relationships between the defendant and her husband and between the defendant and Pace were innocuous in and of themselves. Their deaths occurred approximately ten years before her trial and the only proven similarity between their deaths and the death of the person with whose murder she was charged is that arsenic oxide poison was found in each body and that it was possible for her to have administered it. These facts are inadequate to show a scheme, plan or design in connection with the death of either decedent, much less a common scheme, plan or design. Moreover, the events connected with the deaths of Pace and Norris are so remote in point of time to Merrill's death as to render the same irrelevant to the issues in the case on review. Ross v. State, 112 So.2d 69 (Fla. App.); Williams v. State, 110 So.2d 654 (Fla.); Gluck v. State, 62 So.2d 71 (Fla.); Talley v. State, supra.
The facts in Wrather v. State, 179 Tenn. 666, 169 S.W.2d 854, closely parallel those in the case on review. In that case the son of the convicted defendant admittedly died from arsenic poisoning. His fatal illness extended over a period of two months, during which the defendant prepared his meals and nursed and cared for him most of the time. The state was permitted to produce evidence that the defendant's father-in-law and brother-in-law had died three years and one year respectively before the death of the son, that their bodies, exhumed after the death of defendant's son, were found to contain arsenic in an amount which, in the opinion of a medical expert, produced their deaths, and that they had lived in defendant's home prior to their deaths. As in the case now on review, in Wrather there was no evidence that defendant possessed or administered arsenic to either of the decedents. The Tennessee court reversed the conviction on the ground, inter alia, that the evidence was too vague to show that the defendant administered or had any connection with the poison, and that the lower court therefore erred in admitting into evidence testimony concerning the deaths and arsenic content of the bodies of defendant's father-in-law and brother-in-law, saying
"Without going so far as to hold, with some of the Courts, that the proof of the independent crime must be `beyond a reasonable doubt,' we approve the rule that, to render evidence of an independent crime admissible, the proof of its commission, and of the connection of the accused on trial therewith, must be not `vague and uncertain,' but clear and convincing. Obviously, an absolute essential is that (1) a former crime has been committed, and (2) committed by the identical person on trial. Only thus can identification, or other proof of guilt, of the accused in the pending case be aided by evidence of the independent crime. And this limitation upon admissibility applies equally to all the exceptions to the general rule excluding evidence of other crimes, whether introduced to prove identity, or for any other purpose.
"In the instant case, giving application to the foregoing rule, we do not find that commission of these two alleged independent crimes was proven. Mrs. Wrather had never been accused, much less convicted, of these alleged former crimes and was not and could not be tried therefor under the instant indictment. The evidence (1) that these deaths resulted from arsenic poisoning and (2) that Mrs. Wrather administered poison to these men is neither `clear' nor `convincing.' It may well be characterized as `vague and uncertain.'"
*806 The rule in this state conforms to the rule adhered to by the Tennessee court.
The common-law rule allowing similar fact evidence is the same in civil and criminal cases and is now well ingrained in the law. In an article entitled "Exclusion of Similar Fact Evidence," 46 Harvard Law Review 954, the author observes (at page 983) that the danger of the rule in criminal cases arises from the fact that often when evidence of other offenses is offered, for example, to corroborate the testimony of a material witness,
"* * * relevance for that purpose is being used as a peg upon which to hang the dirty linen of the defendant, so that the jury may determine what sort of man it is upon whose acts they are to render a verdict. * * * A rule which does not provide against it is clearly unsatisfactory; to admit what has been called a `piece of damning prejudice' merely because it is relevant to some subsidiary issue which happens to require proof in the facts of the particular case, is to play into the hands of over-zealous and underscrupulous prosecuting officers. Defendants must be protected against conviction upon inadequate testimony, but at the same time the jury must not be deprived of testimony which is both necessary and sufficient to establish the guilt of the accused.
"There is a human paradox here which logical formulation cannot resolve. In a trial for an unpleasant crime, evidence must be excluded which indicates that the prisoner is more likely than most men to have committed it, but evidence must be admitted which tends to show that no man but the prisoner, who is known to have done these things before, could have committed it. There is a point in the ascending scale of probability when it is so near to certainty, that it is absurd to shy at the admission of the prejudicial evidence.
"Where that point must be fixed cannot be stated in general terms. It varies with the nature of each class of offense, with the crimes within each class, and with the peculiar facts of each case  the strength of the independent evidence, the specific weakness which the similar fact evidence is admitted to remedy, the strength of the similar fact evidence itself. This wide divergence explains the failure of all attempts to create categories of admissibility."
The judgment appealed is reversed and the cause remanded for a new trial.
Reversed and remanded.
WIGGINTON and CARROLL, DONALD K., JJ., concur.