418 So.2d 238 (1982)
Daniel Lowell COLER, Appellant,
v.
STATE of Florida, Appellee.
No. 54250.
Supreme Court of Florida.
May 13, 1982.
Rehearing Denied August 31, 1982.
Tyrie A. Boyer of Boyer, Tanzler, Blackburn & Boyer, Jacksonville, Margaret Good, Louis G. Carres and Thomas S. Keith, Asst. Public Defenders, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and Doris E. Jenkins, Gregory C. Smith and A. Sidney Johnston, Asst. Attys. Gen., Tallahassee, for appellee.
PER CURIAM.
Coler was convicted and sentenced to death on three counts of rape of a child under eleven years and one count of sexual battery of a child eleven years or younger.[1] Each count charged Coler with a separate episode of sexual battery on his daughter during the years 1972 through 1977. At the outset we vacate the death sentence since we have held in Buford v. State, 403 So.2d 943 (Fla. 1981), that a sentence of death is grossly disproportionate and excessive punishment for the crime of sexual assault and therefore forbidden by the eighth amendment as cruel and unusual punishment. Further, although there is sufficient evidence in the record, if believed, to support a conviction, we find that Coler was convicted in part by the use of irrelevant, unfairly prejudicial testimony which deprived him of a fair trial. We therefore reverse his convictions and order a new trial.
After Coler and his wife were divorced early in 1972, the three Coler children lived half the time with each parent. In July 1972 Coler obtained exclusive custody of the children, and they lived with him until late in 1974 when their mother regained custody. Coler was granted weekend visitation privileges with the children. In March 1977 the children complained that they did not want to visit their father. When pressed by their mother for a reason, one of the children indicated that their father had been sexually abusing the daughter. Following an investigation by the Division of Family Services, including a gynecological *239 examination, the state attorney's office sought and received an indictment.
In addition to the testimony of the children concerning the four specific incidents of sexual battery, the state introduced testimony from the children, over objection, of other examples of Coler's deviant sexual behavior. They testified that Coler had the children watch from the doorway as he fondled a woman, that he told them that they or the neighborhood children could use his bed for sexual intercourse, that he told one of his sons to have sex with three women he brought home, and that on a visit to Michigan he made the children eat a cucumber which, just prior thereto, he had inserted into the daughter's rectum. None of this testimony was relevant to prove a material issue of the indictment. It served only to prove the defendant's bad character and was obviously prejudicial.
For a discussion of evidence of a collateral nature we return to the fine opinion of Justice Thornal in Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). That case states the general rule that similar fact evidence is admissible if relevant to a fact in issue even though it also points to the commission of a separate crime. Such evidence is inadmissible, however, if its sole relevancy is to establish bad character on the part of the accused. The prosecution is not permitted to present evidence simply to show a defendant's bad character or to show a disposition toward the commission of the crime charged. If relevant, the bad character exception may have to yield if incidental to a relevant issue, but, when there is no relevance except bad character, it is error to allow such evidence.
To be relevant, evidence must prove or tend to prove a fact in issue. The state argues that the objected-to evidence proves Coler's state of mind.[2] Coler's state of mind, however, was not an issue. State of mind is not a material fact in a sexual battery charge, nor is intent an issue. Cf. Askew v. State, 118 So.2d 219 (Fla. 1960) (specific intent is not the essence of the crime of rape). In this instance the state overstepped the threshold of responsible prosecution with the introduction of this loathsome and despicable testimony. We cannot say it did not affect the jury's verdict.
Coler raises other issues, but most of these alleged errors are unlikely to reoccur in a new trial, and we decline to address them. In any event we are unable to discern other clear reversible error on the issue of guilt.
The convictions and sentences are vacated, and Coler is granted a new trial.
It is so ordered.
BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.
ADKINS, J., dissents with an opinion with which SUNDBERG, C.J., concurs.
ALDERMAN, J., dissents with an opinion with which ADKINS, J., concurs.
ADKINS, Justice, dissenting.
I dissent.
It is true that the evidence of other sexual offenses, just as any evidence tending to prove guilt, may serve to prove defendant's bad character and be prejudicial. On the other hand, the evidence was relevant to show a state of mind or a pattern of criminality.
Ross v. State, 112 So.2d 69 (Fla.3d DCA 1959), was a prosecution for assault, in a lewd and lascivious manner on a girl under fourteen years of age. In affirming the conviction, the court said:
We hold against the contentions of appellant regarding the testimony of the other girl who at the time or times involved was 10 or 11 years old. Testimony of the latter to the effect that appellant had fondled her in a lewd and lascivious *240 manner was presented by the state to show the character of the deed as to motive, intent and absence of mistake, for which it was relevant and admissible, under Talley v. State, 160 Fla. 593, 36 So.2d 201; and Williams v. State, Fla. 1959, 110 So.2d 654.
Id. at 70.
While the record may permit conclusion that the earlier occasion of fondling the other girl was as much as two years before the date of the offense involved here, counsel for the defendant on cross examining the girl established that the defendant engaged in such conduct with her on a continuing series of occasions, the last of which was said by her to have taken place as late as November of 1957, approximately six months prior to the offense charged here.
Id. at 70-71.
The defendant in Summit v. State, 285 So.2d 670 (Fla.3d DCA 1973), was convicted and sentenced for lewd and lascivious conduct upon a female child under the age of fourteen years. On appeal defendant contended that the trial court committed error in admitting into evidence testimony concerning prior sexual offenses with the victim and the victim's sister. In affirming the conviction the court said:
[W]e find the testimony of the victim and her sister regarding prior similar conduct on the part of the defendant with them to show the character of the deed as to motive and intent to be relevant and admissible. Therefore, we hold the trial court to be correct in denying defendant's motion for mistrial on the grounds that the above testimony was admitted improperly.
Id. at 670 (emphasis supplied).
Gossett v. State, 191 So.2d 281 (Fla.2d DCA 1966), was an appeal by a husband and wife from a conviction of assault and rape upon a female under the age of fourteen years. In affirming the conviction the court said:
The only possible error here is whether it was proper for the trial court to permit the introduction of evidence of similar illicit acts, imposed by the appellants on the children, that occurred prior to the time of the act in question.
Id. at 282.
We conclude that the trial judge had authority under Williams v. State, ... [110 So.2d 654 (1959)], and Talley v. State, ... [160 Fla. 593, 36 So.2d 201 (Fla. 1948)], to permit the evidence of former acts of the two defendants in connection with the children involved in the instant case to show a pattern of criminality that makes the prior acts relevant to the commission of the acts in question.
Id. at 283 (emphasis supplied).
Cantrell v. State, 193 So.2d 444 (Fla.2d DCA 1966), was a prosecution for the commission of a lewd and lascivious act on an eight-year-old female child. The defendant was convicted and on appeal claimed error in the admissibility of evidence of similar acts committed by defendant with other female children. In affirming the conviction the court said:
During the course of the trial, the state was allowed to present the testimony of two other female children to the jury. These two witnesses testified essentially that defendant had on previous occasions improperly fondled them while in the swimming pool. Because of the age of these children, we will not repeat their exact testimony. Suffice it to say that it clearly and unequivocally established a course of conduct in the commission of the crime charged in the instant case.
Id. at 445 (emphasis supplied).
The defendant in Alford v. State, 307 So.2d 433 (Fla. 1975), cert. denied, 428 U.S. 912, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976), was convicted of the rape and murder of a thirteen-year-old female. The trial judge admitted testimony that defendant and another man attempted to engage in anal intercourse in the hour preceding the rape and murder of the victim. In affirming the conviction this Court said:
[W]e hold that the circumstances surrounding the earlier unfulfilled sexual act were relevant to establish the state of mind of appellant and the motive for the *241 assault on the victim occurring only a short time thereafter. Such evidence also was relevant to rebut alibi testimony. The trial court did not err in admitting such testimony.
Id. at 438 (emphasis supplied).
In Cotita v. State, 381 So.2d 1146 (Fla. 1st DCA 1980), review denied, 392 So.2d 1373 (1981), the defendant was convicted of committing a lewd and lascivious act on his five-year-old daughter and he appealed. At trial, the victim and her brother, who was present at the time of the commission of the offense charged, testified that defendant committed the offense on the day in question. Over defendant's objection, the state presented the testimony of a neighborhood child who testified that defendant had committed the same type of sex act on her and her young sister. In affirming the conviction, the court said:
The evidence here was relevant to the alibi defense and in addition to establish "a pattern of criminality," a category of admissibility recognized by the Florida Supreme Court in The Williams Case and in Ashley v. State, 265 So.2d 685, 693 (Fla. 1972). Evidence of prior illicit sex acts with the same children involved in the assault and rape prosecution was held properly admitted "to show a patter of criminality" in Gossett v. State, 191 So.2d 281, 283 (Fla.2d DCA 1966)[.] ...
Id. at 1147 (footnote omitted).
In Gibbs v. State, 394 So.2d 231 (Fla. 1st DCA 1981), the defendant was convicted of lewd, lascivious, and indecent assault upon a child. He appealed contending that evidence of prior sex acts committed by defendant against his stepdaughter was improperly admitted. This evidence was held admissible, the court saying:
The existence of a lustful attitude toward his stepdaughter, proven by prior sexual assaults, makes it more likely or probable that the appellant possessed a similar state of mind toward his stepdaughter on the date of the alleged offense. This is relevancy beyond mere propensity.
Id. at 232.
In Whiteman v. State, 343 So.2d 1340 (Fla.2d DCA), cert. denied, 353 So.2d 681 (1977), defendant was convicted of three counts of involuntary sexual battery. The victim was his niece who was seventeen years old. He had custodial control. In affirming the conviction the court said:
The niece was permitted to testify, over objection, to other occasions of sexual intercourse with the appellant (other than those specified in the informations) which had occurred over a lengthy period of time, the first of which occurred when she was 9 years old. She also testified to numerous instances of being handled and fondled by the appellant, being forced to give him baths, reading pornography aloud at his insistence and submitting to other types of sexual by-play (again at various times other than the occasions specified in the charges).
The court below ruled such testimony admissible at a hearing in advance of the trial for the purpose of deciding the admissibility question. In his ruling the trial judge stated:
The entire relationship between the parties, that is, between the defendant and the alleged victim is relevant and material. Anything that went on between them in view of the allegations of the information that he [the appellant] was exercising this authority over her, anything going to that point, the Court finds it relevant, even though it may also indicate some other wrongdoing, but it is relevant.
Id. at 1341.
Appellant's continuing course of sexual aberration in reducing his legal ward to a veritable automaton was clearly relevant to the manner in which his parental authority over her had been exercised so as to reduce the niece to the status of a sexual plaything. Nothing is more relevant than the milieu in which the victim was reared by her legal guardian and her will or freedom to consent effectively vitiated.
Finally, this court is well aware of the fact that the introduction of evidence of *242 collateral crimes tends to impress upon the minds of the jurors that the defendant has a propensity to commit crimes. Beasley, supra at 286. See C. McCormick, Evidence § 190 (2d ed. 1972); 1 J. Wigmore, Evidence § 194 (3d ed. 1940). Almost any case wherein such evidence is allowed must, of necessity, have such a quality. Nevertheless, where such is not the sole purpose of admitting the evidence and the similar fact evidence is relevant to prove a material fact in issue, admission is not unduly prejudicial. Green v. State, 190 So.2d 42 (Fla.2d DCA 1966).
Id. at 1343.
Defendant Coler was charged with four separate episodes of sexual battery on his daughter who was under eleven years of age during the years 1972 through 1977. His alleged conduct with his daughter was not normal, but that of a sexual deviant. Although the evidence certainly proved defendant's bad character and was obviously prejudicial, it was nevertheless admissible to prove motive, state of mind, or pattern of criminality.
It would be impossible to prove beyond a reasonable doubt the four isolated instances of sexual battery over a course of five years by relying on the testimony of a child. There must be corroboration. Other acts of sexual abuse during this period of time would be admissible, whether they are directed to the victim or to others. The rule regarding evidence of a collateral nature were thoroughly explained in Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). After examining the numerous authorities construing Williams v. State, I believe that the majority has suffered from semantic aphasia.
Of course, the death penalty could not be imposed. Buford v. State, 403 So.2d 943 (Fla. 1981).
SUNDBERG, C.J., concurs.
ALDERMAN, Justice, dissenting.
I disagree with the majority holding that Coler's convictions for three counts of rape of a child under eleven years and one count of sexual battery of a child eleven years or younger should be reversed because the trial court permitted evidence of other sexual offenses by Coler. Justice Adkins, in his dissent, is correct in concluding that this evidence was admissible because it was relevant to prove motive, state of mind, or pattern of criminality. Furthermore, in my view, the trial court was completely justified in finding that Coler's offenses were especially heinous, atrocious, or cruel. The court said:
The Defendant is the father of the following three children: Mary Coler, the victim, born July 20, 1965; Arthur Coler, born October 9, 1963; and Christopher Coler, born June 11, 1962. Defendant and his wife were divorced in 1972. The three children lived with their mother at their residence on Cherokee Villa Lane in Jacksonville until the Defendant moved into said residence and the mother moved out, took the furniture and moved into an apartment in Jacksonville. The said children continued to reside at the Cherokee Villa Lane residence with their father who purchased new furniture for the home. The first time Defendant raped his daughter Mary was after the mother moved out and before Christmas, 1972. The daughter was then seven years old. He forced her to perform fellatio on him, after which he forced her to submit to sexual intercourse. This occurred approximately every week or every other week thereafter. The bleeding which she suffered as a consequence subsided after approximately one or two months. She, of course, suffered pain from these attacks by the Defendant and testified that she would scream but that the Defendant would usually have his hand or fist up to her mouth and that he would hit or strike her. Defendant's son, Christopher, testified that he occasionally would hear Mary's screaming coming from Defendant's bedroom.

*243 Mary specifically recalled that on Christmas night, 1972, he again raped her after they had returned home to the Cherokee Villa Lane residence after having visited Defendant's wife's residence in Fernandina, the Defendant having since remarried. This attack was similar to the first which occurred as aforesaid.
Another specific incident testified to by the Defendant's daughter and son, Christopher, occurred two or three months after Christmas, 1972, again at the Cherokee Villa Lane residence. On this occasion, Defendant got Christopher out of his bedroom and forced him to come into Defendant's bedroom to watch while Defendant again raped his daughter. As this was occurring, Christopher, then ten years old, attempted to use the telephone to call the police but Defendant prevented this by striking his son. The son returned to his bedroom. A short time later that same night, Defendant entered Christopher's room and ordered him to have sexual intercourse with his sister. When the son refused, Defendant held a pair of scissors up to his penis and threatened to amputate it. Defendant then performed fellatio on his son and forced his son to have sexual intercourse with his daughter. Some time prior to this occasion, Christopher testified that he recalled walking into Defendant's bedroom and observing bloody towels and sheets on Defendant's bed.
The children continued to live with the Defendant until a few months after the summer of 1974. During this time, the Defendant continued to attack his daughter in the same manner as the first occasion, that is, by first making her perform fellatio on him and then raping her. The frequency of such assaults was estimated by the daughter at approximately every week or two. Christopher testified that frequently when he would get up in the morning to leave for school, he would see his sister on top of the Defendant in Defendant's bed and that the Defendant would shove her off when he saw Christopher.
Another instance which Defendant's daughter specifically recalled was an assault which occurred during the summer of 1974. She and her brother, Arthur, were visiting their mother at the apartment complex where the mother lived. Mary and Arthur were at the swimming pool when the Defendant arrived at the complex and dragged Mary off to his car, took her to his home and again attacked and raped her in the same manner as aforesaid.
Shortly after the summer of 1974, the children's mother obtained custody of them at which time they moved back to live with her. Pursuant to the Defendant's visitation rights, the children would visit Defendant every other weekend. The Defendant continued to rape his daughter on a regular basis until March, 1977. In March, 1977, a few weeks before Defendant's arrest on the subject charges, Mary, Arthur, and Christopher went to Marineland with the Defendant. After returning to Jacksonville, they went to Defendant's residence at Cherokee Villa Lane where Defendant again raped his daughter. This was the last time he attacked her.
In March, 1977, Christopher revealed to his mother and stepfather what had been occurring during the past several years relative to Defendant's aforesaid activities. This was reported to the police and Defendant was arrested. Defendant fled the jurisdiction and went to Pago Pago, American Samoa. Subsequently, he waived extradition and was returned to Jacksonville to stand trial.
Defendant's daughter was taken to University Hospital in Jacksonville on March 28, 1977 for a pelvic examination. Dr. Guy Benrubi, chief resident for obstetrics and gynecology examined her at that time. At the trial, the Court found him qualified to testify as an expert witness in the field of obstetrics and gynecology. Dr. Benrubi testified that, upon his examination of Mary, he discovered a complete absence of the posterior hymenal ring and a great deal of scarring on the posterior fourchette, the aspect of the entrance of the vagina immediately next *244 to the hymenal ring. This was not a congenital anomaly. Dr. Benrubi stated that, in his opinion, this condition was caused by the repeated penetration of the vagina at an early age by some object equal or greater than the diameter of the vaginal entrance at a time when the vagina was not ready to receive such object, that is, at a time pre-puberty when there was no estrogen circulating in the child's body to make the vagina pliable. Dr. Benrubi testified that he had never before seen as much scarring as he did on his examination of this child.
Even though I agree with the trial court's findings as to aggravating circumstances and lack of mitigating circumstances, I find that the death sentences imposed for these offenses of rape and sexual battery must be vacated. Recently, in Buford v. State, 403 So.2d 943 (Fla. 1981), we held that a sentence of death is grossly disproportionate and excessive punishment for the crime of sexual assault and is therefore forbidden by the eighth amendment as cruel and unusual punishment.
I would affirm the convictions, but I would remand to the trial court to reduce the death sentences to life sentences with a mandatory term of twenty-five years' imprisonment. The trial court, of course, has the discretion to make these life sentences run consecutively.
ADKINS, J., concurs.
NOTES
[1] The first three counts were based on § 794.01(1), Fla. Stat. (1971). The fourth count was based on § 794.011(2), Fla. Stat. (1975).
[2] We make no judgment as to whether the evidence actually tends to prove or disprove Coler's state of mind. Further, we do not comment on whether the introduction of such testimony should be excluded as a result of weighing its probative value against any unfair prejudice. See § 90.403, Fla. Stat. (1979) (not applicable to the trial of this cause).