275 So.2d 589 (1973)
Louis Fritz NATHEY, Appellant,
v.
STATE of Florida, Appellee.
No. R-96.
District Court of Appeal of Florida, First District.
April 10, 1973.
Richard W. Ervin, III, Public Defender; and William C. Owen, Special Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen.; and William E. Whitlock, III, Asst. Atty. Gen., for appellee.
PER CURIAM.
The briefs and the record on appeal having been read and given full consideration, and the appellant having failed to demonstrate reversible error, the judgment of the lower court is affirmed.
CARROLL, DONALD K., Acting C.J., and JOHNSON, J., concur.
RAWLS, J., dissents.
*590 RAWLS, Judge (dissenting).
Once again we are confronted with a factual situation wherein the State of Florida, by its prosecuting officials, indicted a defendant for a specified crime and tried and convicted him for his proclivity to commit heinous offenses of every type and nature during his adult lifetime. And, once again I must register my dissent. To concur in this action, in my opinion, is to obliterate all concepts of due process granted by the Constitution of the United States and the State of Florida.
Appellant, Louis Fritz Nathey, was indicted and convicted of having, on July 22, 1969, raped his then 11-year-old daughter. A capsule of the trial evidence is that the minor daughter, prior to trial, had twice been to the Tallahassee Detention Center and several foster homes. Two years after the alleged offense and upon again being delivered to the detention center, she decided to bring the alleged rape to the attention of authorities. The daughter's younger brother, Thomas, corroborated her testimony to some extent by stating that he had seen his father on the bed with his sister and also had seen his father sitting on the floor with his sister on top of his father. The younger brother's recollection of the foregoing incidents was refreshed as a result of discussions with his family. The only other evidence corroborating the foregoing testimony was that of an older sister and her husband who testified that they were in the house at the time of the alleged rape but heard or were told nothing of the event, even though on the morning following the alleged incident they observed that the prosecuting witness's lip was cut and swollen.
At this stage of the prosecution, the State unleashed its tornado of irrelevant, immaterial and unrelated evidence. In addition to the prosecuting witness, three of appellant's four grown daughters were paraded to the stand and each testified in detail as to how they were sexually molested by appellant during their adolescent years. One daughter, Ella, age 28, told the jury that when she was about 12 years old her father stood her up in the shower stall, put his feet between hers, and told her to hold her legs tight. She further elaborated on occasions during her youth when she was fondled by her father. Another daughter, Ethel, age 18, advised the jury that when she was an adolescent her father had sexual relations with her. Each of the five children who testified against their father delineated in rather great detail his proclivity to beat them and, also, of his having been the instigator of having his wife and some of his children committed to mental hospitals for no reason.
As stated at the outset, the testimony reconstructed the family life of the appellant, his wife, and ten children and painted a picture of a family which had been sick, deprived and tortured from the inception of the family unit until the date of the trial. The record leaves this reader with the firm impression that this appellant is a "horrible" man and doubtless it left the trial jury with no alternative but to reach the same conclusion. The very nature of the crimes and circumstances testified to by this family on the part of their father for over a 20-year period was so highly inflammatory that the indictment upon which he was put to trial disappeared in the fog of the irrelevant and immaterial testimony permitted by the trial court.
To further elaborate would serve no useful purpose. Williams v. State, 110 So.2d 654 (Fla. 1959), does not and was not intended to grant to the prosecutors of this state a right to conduct a carte blanche inquiry into the activities of appellant's entire past life under the guise of proving the commission of a particular crime on a date certain. See this court's opinion in Simmons v. Wainwright, 271 So.2d 464 (1 Fla. App. 1973); and my dissent in Hirsch v. State, 268 So.2d 441 (1 Fla.App. 1972); and my dissent in Clark v. State, 266 So.2d 687 (1 Fla.App. 1972). I would reverse and remand for a new trial.