343 So.2d 1340 (1977)
Lawrence M. WHITEMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 76-912.
District Court of Appeal of Florida, Second District.
March 30, 1977.
Lawrence E. Lyman, St. Petersburg, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
OTT, Judge.
Appellant was convicted of three counts of involuntary sexual battery in violation of Section 794.011(4)(e), Florida Statutes.
He appeals on two grounds that arise from a ruling of the trial court that similar fact evidence was relevant to the material issues framed by the charges, was therefore admissible into evidence and constituted a proper subject for appropriate comment by the prosecutor. We affirm.
Section 794.011(4)(e), Florida Statutes provides in relevant part:
(4) A person who commits sexual battery upon a person over the age of 11 years, without that person's consent, ... shall be guilty of a felony of the first degree ...
(e) When the victim is older than 11 but less than 18 years of age and the offender is in a position of familial, custodial, or official authority over the victim and he uses this authority to coerce the victim to submit. (Emphasis added)
The appellant was charged in three separate informations with having forced his then 17 year old niece to have sexual intercourse on three separate occasions while she was under his familial and custodial control. The appellant had been given custody of the niece and her three brothers in official *1341 guardianship proceedings when the niece was approximately four years of age.
The niece was permitted to testify, over objection, to other occasions of sexual intercourse with the appellant (other than those specified in the informations) which had occurred over a lengthy period of time, the first of which occurred when she was 9 years old. She also testified to numerous instances of being handled and fondled by the appellant, being forced to give him baths, reading pornography aloud at his insistence and submitting to other types of sexual by-play (again at various times other than the occasions specified in the charges).
The court below ruled such testimony admissible at a hearing in advance of the trial for the purpose of deciding the admissibility question. In his ruling the trial judge stated:
The entire relationship between the parties, that is, between the defendant and the alleged victim is relevant and material. Anything that went on between them in view of the allegations of the information that he [the appellant] was exercising this authority over her, anything going to that point, the Court finds it relevant, even though it may also indicate some other wrongdoing, but it is relevant.
At issue is the Williams rule. See Williams v. State, 110 So.2d 654 (Fla. 1959), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).[1] Since 1886, convictions have been reversed in Florida because of the admission of evidence of other offenses wholly independent of the case being tried. See Selph v. State, 22 Fla. 537 (1886); Mann v. State, 22 Fla. 600 (1886).
The rule governing the admission of similar fact evidence began as a rule of admissibility. 110 So.2d at 659. However, as cases multiplied and developed, courts inclined toward announcing the rule in terms of exceptions to the broad rule of exclusion rather than in terms of a broad rule of admissibility. 110 So.2d at 659.
In 1959, the supreme court attempted to chart a new approach to similar fact evidence by doing two things. First, the court mandated that the rule of admission or relevancy should supplant the rule of exclusion. Admission  if relevant  would be the general rule and exclusion the exception: "[U]nless precluded by some specifically recognized exception, all relevant testimony is admissible." 110 So.2d at 660.
Having put a "new look" on the admissibility of similar fact evidence, see Green v. State, 190 So.2d 42 (Fla.2d DCA 1966), the supreme court promulgated a rule defining what was to be admissible:
Relevant evidence will not be excluded merely because it relates to similar facts which point to the commission of a separate crime. The test of admissibility is relevancy. The test of inadmissibility is a lack of relevancy. 110 So.2d at 659-60. Evidence revealing other crimes is admissible if it casts light upon the character of the act under investigation by showing motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality so that the evidence of the prior offenses would have a relevant or a material bearing on some essential aspect of the offense being tried. 110 So.2d at 662.
In another but separate case entitled Williams v. State, 117 So.2d 473 (Fla. 1960), the supreme court reaffirmed the validity of the Williams rule, but reversed for the defendant because the state had been permitted to go into greater detail than was necessary *1342 to establish similar fact evidence tending to reveal the commission of a collateral crime.[2]
In that case, the defendant had been arrested for the murder of the proprietor of the H & K Market, who had been shot to death in the course of a robbery. Twentyeight days later, the Blue Grass Market was robbed by persons using the same weapon and following a similar pattern. The state was permitted to introduce many objects (i.e., pictures, bottles, pistols, etc.) into evidence which had nothing whatever to do with the identity of the defendant, the weapon he used, the similarity of pattern or other material aspect of the crime charged.
The court held that the testimony about the collateral crime (the Blue Grass Market robbery) was so disproportionate that the latter offense was made a "feature instead of an incident." See Fivecoat v. State, 244 So.2d 188 (Fla.2d DCA 1971); Green v. State, 228 So.2d 397 (Fla.2d DCA 1969). The court found that measured by volume, the evidence relating to the collateral crime exceeded all other testimony combined and most of it was immaterial to show the material facts in issue.
With the second Williams case standing for a caveat against prosecutorial overzealousness, a further caveat was introduced in Duncan v. State, 291 So.2d 241 (Fla.2d DCA 1974). In Duncan the court held that "neither a `continuing course of conduct,' `plan or scheme' nor `modus operandi' is an end in and of itself which may be proved in a criminal case." 291 So.2d at 243; see Beasley v. State, 305 So.2d 285 (Fla.3d DCA 1974); Braen v. State, 302 So.2d 485 (Fla.2d DCA 1974). The court stated that "[e]vidence relating to similar offenses is admissible only when they, or any of them, are relevant in a given case to one of the essential or material issues framed within the charge instantly being tried." 291 So.2d at 243.
Neither the warnings raised in the second Williams case or in Duncan prevent an affirmance herein. In the instant case the statute placed parental authority and coercion in issue. Thus, we are not troubled by the trial court's ruling that similar fact evidence would be relevant and admissible to show the "entire relationship between the parties" and the familial or parental domination of the niece by the accused within that relationship.
Furthermore, we do not find that the asserted relevance of the so-called "independent crimes" (the handling-fondling, pornography reading, bathing and sexual by-play) is "illusory, fancied, supposititious or unsubstantial" as claimed by appellant. See Headrick v. State, 240 So.2d 203, 205 (Fla.2d DCA 1970). Rather, there was an obvious similarity between the offenses charged in the informations and the independent crimes testified to by the victim.
With specific reference to the caveat in the second Williams case, we are cognizant of the danger inherent in allowing the collateral crime to become the "feature instead of an incident":
... in a criminal prosecution, such procedure devolves from development of facts pertinent to the main issue of guilt or innocence into an assault on the character of the defendant whose character is insulated from attack unless he introduces the subject. 117 So.2d at 475-76.
However, we feel that the holding of the second Williams case was materially influenced by the court's awareness of the penalty of death looming in that case. The court stated that "it is [our] responsibility and obligation ... to deal cautiously with judgments imposing the supreme penalty." 117 So.2d at 476. Even if, assuming arguendo, the Williams II court's apparent concern with the death penalty did not dilute its warnings against disproportionate treatment of the collateral crime, we find *1343 no such disproportionate emphasis herein. See Hines v. State, 243 So.2d 434 (Fla.2d DCA 1971); Keel v. State, 243 So.2d 630 (Fla.4th DCA 1971).
We also find no merit in appellant's contention that a "continuing course of conduct" was the end sought to be proved by the state in violation of the holding in Duncan. Appellant's continuing course of sexual aberration in reducing his legal ward to a veritable automaton was clearly relevant to the manner in which his parental authority over her had been exercised so as to reduce the niece to the status of a sexual plaything. Nothing is more relevant than the milieu in which the victim was reared by her legal guardian and her will or freedom to consent effectively vitiated.
Finally, this court is well aware of the fact that the introduction of evidence of collateral crimes tends to impress upon the minds of the jurors that the defendant has a propensity to commit crimes. Beasley, supra at 286. See C. McCormick, Evidence § 190 (2d ed. 1972); 1 J. Wigmore, Evidence § 194 (3d ed. 1940). Almost any case wherein such evidence is allowed must, of necessity, have such a quality. Nevertheless, where such is not the sole purpose of admitting the evidence and the similar fact evidence is relevant to prove a material fact in issue, admission is not unduly prejudicial. Green v. State, 190 So.2d 42 (Fla.2d DCA 1966).
AFFIRMED.
McNULTY, Acting C.J., and GRIMES, J., concur.
NOTES
[1] In Williams, the defendant had been hiding on the floor of the back seat of the victim's automobile. After returning to her car, the victim drove a short distance whereupon the defendant reached over from the back seat and stabbed her in the chest. Later, he twice raped her. Upon arrest the defendant maintained that he had entered the victim's automobile to take a nap under the mistaken belief that the automobile belonged to his brother. At trial there was evidence that about six weeks before the attack on the victim, a young girl had found defendant on the floor in the back of her automobile parked in the same parking area. Upon arrest the defendant had given a similar story, i.e., that he had entered the automobile mistakenly to take a nap, believing that it was his brother's automobile.
[2] The second Williams case was reversed for a new trial. Thereafter, in Williams v. State, 143 So.2d 484 (Fla. 1962), the court again dealt with the same defendant. Prosecutorial overkill has more recently been criticized in two Second District Court of Appeal cases. See Davis v. State, 276 So.2d 846, 849 (Fla.2d DCA 1973); Christie v. State, 246 So.2d 605, 606 (Fla.2d DCA 1971).