381 So.2d 1146 (1980)
Phillip Martin COTITA, Appellant,
v.
STATE of Florida, Appellee.
No. II-224.
District Court of Appeal of Florida, First District.
February 22, 1980.
Rehearing Denied April 16, 1980.
John Peter Kirtz, Jr., and Owen E. Adams, Sr., Pensacola, for appellant.
Jim Smith, Atty. Gen., and Michael H. Davidson, Asst. Atty. Gen., for appellee.
BOOTH, Judge.
This cause is before us on appeal from the final judgment of the Circuit Court, Escambia County, entered on a jury verdict finding defendant guilty of committing a lewd or lascivious act in violation of Florida Statute § 800.04[1] and sentencing him to fifteen years imprisonment. The victim of the offense was defendant's daughter, age five. The sole issue presented is whether the trial court erred in admitting evidence of defendant's commission of similar offenses. The test of admissibility of such evidence is the rule of Williams v. State, [The Williams Case][2] that evidence is admissible "If found to be relevant for any purpose save that of showing bad character or propensity" of the accused and, evidence is relevant "if it bears a certain relation to the crime charged to the extent that it is relevant to a fact in issue ..."[3] Defendant contends that the evidence here was only relevant to show his bad character or propensity and should not have been admitted.
The testimony showed that defendant, his wife, a son age ten and a daughter *1147 age five, resided in a mobile home in a trailer park owned and managed by defendant's mother and father. Also residing in the trailer park in a nearby mobile home was the Bolton family who had two daughters, ages nine and eleven. The Bolton girls visited in defendant's trailer and watched television with the defendant, the victim and her brother.
At trial, the victim and her brother, who was present at the time of the commission of the offense charged, testified that appellant committed the offense on the day in question. Appellant's wife testified and, though not a witness to the commission of the offense, corroborated her children's testimony as to the events occurring prior to and immediately thereafter. In the course of their testimony, the victim's mother, referring to the illicit sex act committed on the daughter, used the word "again" and the victim's brother testified that he had seen it "before."[4] On appeal,[5] defendant contends there was error in admitting the testimony which referred, however briefly, to prior similar conduct of the accused with the victim.
Over defendant's objection, the State presented the testimony of Lisa Diane Bolton, a nine-year-old child, and her mother, Carolyn Bolton. The neighborhood child testified that defendant had committed the same type of sex act on her and her young sister in a shed in the trailer park and also in defendant's trailer within the preceding year.
Mrs. Bolton, mother of the two girls, testified that she became aware of several incidents between defendant and her children; that she reported the incidents to defendant's wife and to his mother; that defendant's mother first asked her to move out of the trailer park and then offered to give her free rent if she would agree not to press charges against defendant. Defendant's mother denied negotiating with the neighbor to prevent charges being filed against her son but admitted that Mrs. Bolton told her "something ... about Phillip's bothering the children" and admitted a "gift" of one month's rent.[6]
Defendant presented an alibi defense supported primarily by the testimony of his mother that defendant and his family had been in her home on the day and at the time of the commission of the offense charged. The testimony of defendant's mother, the most lengthy of any witness, was that her son's children were controlled by his wife and that she had overheard them being coached to testify against him. The testimony of defendant's mother, and to some extent that of his father, was directly in conflict with the testimony of the defendant's wife and children as to the alibi defense. The jury was required to resolve the conflict. Mrs. Bolton's testimony mitigated against crediting the testimony of defendant's mother both as to the alibi and as to the "coaching" charge. The Bolton incident indicated the lengths to which appellant's mother would go to protect her son against charges similar to the one on trial.
The evidence here was relevant to the alibi defense and in addition to establish "a pattern of criminality," a category of admissibility recognized by the Florida Supreme Court in The Williams Case[7] and in Ashley v. State, 265 So.2d 685, 693 (Fla. 1972). Evidence of prior illicit sex acts with the same children involved in the assault and rape prosecution was held properly admitted "to show a pattern of criminality" in Gossett v. State, 191 So.2d 281, 283 (Fla. 2nd DCA 1966), the court holding (191 So.2d at 283):

*1148 "We conclude that the trial judge had authority under Williams v. State, . . and Talley v. State,[8] to permit the evidence of former acts of the two defendants in connection with the children involved in the instant case to show a pattern of criminality that makes the prior act relevant to the commission of the acts in question."
Closely related is Cantrell v. State, 193 So.2d 444 (Fla. 2nd DCA 1966), a prosecution for lewd and lascivious assault on an eight-year-old girl. Therein, evidence was admitted that defendant had previously committed similar acts against two other little girls who, like the victim, had been guests at defendant's backyard swimming pool. The court held the evidence admissible because it "established a course of conduct in the commission of the crime charged in the instant case." (193 So.2d 445)
Florida courts have stated other bases of relevancy in similar cases. In Summit v. State, 285 So.2d 670 (Fla. 3rd DCA 1973), evidence of prior similar lewd and lascivious acts against the victim of the offense charged and against her sister was held properly admitted, the court holding (285 So.2d at 670):
"[W]e find the testimony of the victim and her sister regarding prior similar conduct on the part of the defendant with them to show the character of the deed as to motive and intent to be relevant and admissible."
In Ross v. State, 112 So.2d 69 (Fla. 3rd DCA 1959), the court affirmed a conviction of lewd and lascivious assault against an eleven-year-old girl, and the admissibility of testimony that defendant had committed a similar offense against a similar victim, holding (112 So.2d at 70):
"We hold against the contentions of appellant regarding the testimony of the other girl who at the time or times involved was 10 or 11 years old. Testimony of the latter to the effect that appellant had fondled her in a lewd and lascivious manner was presented by the state to show the character of the deed as to motive, intent and absence of mistake, for which it was relevant and admissible... ."
In Andrews v. State, 172 So.2d 505 (Fla. 1st DCA 1965), evidence that defendant had committed similar illicit sex acts against one other than the victim of the offense charged was held admissible, this court holding (172 So.2d at 507):
"The testimony concerning the subsequent offense is to the effect that it was committed against a person in an age group comparable to that of the victim named in the charge, at the same place, and under circumstances almost identical to those connected with the offense charged. The similar fact evidence in this cause was clearly relevant in its bearing on defendant's identity, intent, plan and design, as well as to show lack of inadvertence, and it meets the test of admissibility."
More recently, in Owens v. State, 361 So.2d 224 (Fla. 1st DCA 1978), this court affirmed a conviction under the same statute here involved for a lewd and lascivious assault by a father on his stepdaughter, a child under the age of fourteen years. In that case, the trial court admitted testimony of the stepdaughter and her mother as to a similar incident of fondling which had occurred six days before the offense charged. This court held (361 So.2d at 225):
"The testimony objected to tended to prove motive, `which inquires into the accused's reason for acting as charged and suggests that because he had a specific reason to commit the offense he did so.' . .. The trial judge acted within sound discretion in deciding that the legitimate purpose of the evidence outweighed its inherent prejudice ..." (citations omitted)
Here, we note a close similarity in victims, locale, sex act and a similar parental or custodial relationship between the accused and the victims. We find no merit in defendant's contention that The Williams Rule precludes collateral crime or similar *1149 fact evidence except where the defendant's identity is at issue. In The Williams Case itself, identity was not contested. There, the defendant took the stand, admitted sexual relations with the victim, but claimed consent and testified that the ice pick wound to the victim's chest was accidental. Evidence that six months earlier the defendant had been apprehended in connection with an aborted assault on another similar victim was held properly admissible, inter alia, "to meet the anticipated defense of consent."
The Williams Case holds that logic, common sense and "the infinite variety of human activities"[9] precludes a listing of all categories of relevancy. The Supreme Court in Williams disapproves prior opinions which required relevant evidence be fitted into some previously recognized exception in order to be admissible, stating (110 So.2d at 659):
"The objectionable feature of this approach is that seemingly the fundamental principle of logical relevancy is abandoned. In its place is substituted a search for an exception under which the evidence becomes admissible but which will be discovered only if out of the infinite variety of human activities a case has arisen in which some court has held it so."
The above quote states the rationale of Williams in rejecting what is termed by a leading and much cited authority, Julius Stone, as the "spurious rule", to wit:[10]
"A much broader spurious rule excluding all similar facts except those falling within a few closed categories settled by earlier decisions."
The proper or "original rule," as termed by Stone, is a narrower rule which excludes "only evidence that is relevant merely to propensity,"[11] and is contrasted as follows:
"The original rule admits evidence relevant to any of the innumerable issues which can arise out of the infinitely variable circumstances of men's behavior. The spurious rule only admits relevant evidence when it is within one of the list of exceptions to the general rule of exclusion. If not within those categories it is inadmissible however relevant it be, for it is caught by the residual rule excluding all evidence of other offenses. A court which is applying the spurious rule will exclude evidence clearly, even overwhelmingly, relevant to an issue other than propensity, because it finds difficulty in fitting the case into the rigid category."[12]
Stone further notes that in sex crime cases where identity is not at issue, the spurious rule "becomes little short of an absolute unqualified rule of exclusion,"[13] a result avoided in spurious rule jurisdictions by recognition of a special exception for sex crimes.[14]
Florida under the Williams Case follows the original and better reasoned rule, which makes no special exception for any type of crime. The familiar categories stated as the basis of admissibility of similar fact evidence "are given by way of example and not by way of limitation."[15] In sex crimes cases the courts of this State have allowed relevant similar fact evidence involving the same victim[16] and involving a *1150 different victim.[17] The evidence has been held admissible for a variety of reasons depending on the facts and issues involved, as in trial of other crimes.
Similar fact evidence has been properly disallowed where its probative value was slight or where its effect was unduly prejudicial. In Knox v. State, 361 So.2d 799 (Fla. 1st DCA 1978), this court correctly reversed a conviction under Florida Statute § 800.04. In that case the defendant was charged with a specific sex offense against his thirteen-year-old stepdaughter, stated to have occurred on May 21. The State's evidence at trial was that the offense charged, as described by the prosecutor in his opening remarks, was committed the night of May 22, but another offense against the daughter had occurred on May 21, within the time specified by the statement of particulars. In reversing and remanding for a new trial this court held (361 So.2d at 800):
"Appellant claims first that it was a violation of the `Williams Rule' for the State to present evidence of the May 22 incident throughout his trial on the May 21 incident. We agree. It is obvious on this record that the State's confusion about the date of the incident witnessed by the mother led to the admission of the evidence on the subsequent incident which was highly prejudicial to the appellant in defending against the charge on the May 21 [incident]."
The admission of evidence of other offenses against the same victim in Knox combined with the variance between the offense charged and the offense proved to nullify defendant's alibi and to deprive him of a fair trial. Other language in the opinion, beyond the holding of the case, to the extent inconsistent herewith, is disapproved.[18]
Great care has been exercised by the courts of this State following the mandates of The Williams Case to "cautiously scrutinize" such evidence, and of the subsequent Williams v. State[19] case that the collateral offense not become a feature at the trial. The record here establishes that the trial *1151 court conscientiously followed both mandates.[20]
Accordingly, the judgment below is AFFIRMED.
MELVIN, WOODROW M., Associate Judge, concurs; ROBERT P. SMITH, Jr., J., dissents with an opinion.
ROBERT P. SMITH, Jr., Judge, dissenting:
Prosecuting Phillip Cotita for an oralvaginal act committed upon his five-year-old daughter on May 1, 1977, the State presented direct testimony by the child and her ten-year-old brother, an eye witness, and corroborating testimony by their mother, Mrs. Cotita. Then through the Bolton witnesses the State was permitted to prove also, in its case in chief, that Cotita committed similar acts upon the two Bolton girls some ten months earlier.
In my opinion the Bolton other-crimes testimony was inadmissible under any rational evidentiary test yet articulated by a Florida court. The evidence was irrelevant to any real issue on trial concerning Cotita's intent in acting as charged upon his daughter, or concerning his motive, identity, plan, or design in so acting  to mention those most common relevancies[1] which Professor Stone denounced as "spurious", not for any lack of conceptual integrity in themselves, but for their exclusive listing as "a few closed categories" of exceptions to a general exclusionary rule.[2] Nor was this evidence admissible under Stone's preferred and "original" test, Is the evidence relevant except to show bad character and propensity?, which Williams v. State, 110 So.2d 654 (Fla. 1959) wrote into Florida law. Evidence of Cotita's prior sexual offenses upon other children tended to prove only his disposition or propensity to mistreat children sexually, which  however logically relevant it may seem[3]  is not legally relevant to whether he so mistreated his daughter on May 1, 1977. The evidence was not otherwise Williams-relevant.
I think the majority opinion, by its celebration of "pattern of criminality" evidence in sex offense prosecutions, indeed in prosecutions "for any type of crime", radically transforms Stone's scholarship and "The Williams Case" on which the opinion ostentatiously relies. The theme of the majority opinion, I submit, is that other-crimes evidence is now relevant for precisely those *1152 qualities, its showing of bad character and criminal sexual propensities, which for 150 years have been the cause for restricting its use. This upending of sound policy is accomplished by exploiting congenital weaknesses in both the "spurious" and the "original" versions of the other-crimes evidence rule: the categorical blindness of the "spurious" rule to probative evidence which is not easily typeset as relevant to motive, or intent, or identity, and so on, and the susceptibility of those terms to manipulation; and the tendency of the "original" rule to become open-ended as the concept of relevancy is enlarged and that of propensity, its only counterweight, is shrunk, so eventually admitting evidence which is only remotely probative but is massively destructive of fair judgment.
Ever critical of the "spurious" exclusionary rule, Professor Stone showed how its concentration on categories of relevant evidence (he could not have dreamed of a category labeled "pattern of criminality"!) led to "utter perversions" of the exclusionary rule, destroying even its beneficial aspects:[4]
[B]ecause attention is concentrated on interpreting the list of exceptions, not only is the requirement of relevance forgotten, but the very object of the original rule  to prevent proof of guilt by proof of propensity to commit  is quite forgotten, and eventually an exception is admitted to the broad rule which admits evidence precisely for the reason that the original rule excluded it. The broad rule, which seemed to give greater protection to the accused, has produced a rule depriving him of every shred of protection.
As regards his favored "original" standard of relevant-except-via-propensity?, Professor Stone, himself possessing a sturdy sense of true relevance, naively supposed that others would be similarly discriminating. He did not imagine, for example, that a court would think it probative, in a prosecution for a fondling offense committed on child A on May 1, 1977, that the defendant committed similar offenses on children B and C several months earlier. After all, Rex v. Cole, the briefly-reported English decision to which Stone traced the "original" rule, was a sex crime prosecution similar to this one, and the court held "an admission by the prisoner that he had committed such an offense at another time and with another person, and that he had a tendency to such practices, ought not to be admitted."[5] Stone agreed. In criticizing the 1890 Illinois decision in Parkinson v. People[6] which excluded evidence that the defendant indecently assaulted, on another occasion, the same young girl whom the prosecution charged he raped, Stone argued that "it is surely undeniable that such other acts bear upon a most material issue, that of the defendant's lust toward the girl with whose rape he is charged, only one step removed from the main issue, namely, whether he indulged that lust"; and Stone continued:[7]
There is all the difference in the world between such evidence and evidence merely to propensity, for instance, showing that the defendant had been guilty of rapes of other girls at other times.
Stone footnoted the observation: "In appropriate circumstances even this latter evidence might be relevant other than through propensity, e.g., to show the physical fact of a state of lust at a given moment."[8]
The majority opinion also suggests that this other-crimes evidence was "relevant" *1153 to issues raised by Cotita's alibi, or probative on the matter of his mother's credibility as a witness. I do not doubt that proof of Cotita's propensity to commit sexual offenses on young girls was useful to the prosecution in destroying the effect of that defense testimony, as well as any other defensive matter including the presumption of innocence; but usefulness is not equivalent to relevance. Proving that Cotita committed sex offenses against the Bolton children some time ago did not tend to show he was present at the crime scene on May 1, 1977. And the trial court, while admitting evidence of the sex offenses themselves, excluded the evidence that Cotita's mother negotiated with Mrs. Bolton to withhold charges against Cotita. This latter evidence, if not judged more inflammatory than probative, could be admissible to show the interest and credibility of the witness, Cotita's mother; but the substantive evidence of Cotita's alleged other crimes could not be relevant and admissible for that purpose.
Scarcely a year ago, this court decided Knox v. State,[9] a sex crime prosecution remarkably like this one, and excluded evidence of another like sex offense against the same child victim. Because such evidence as that is generally regarded as more relevant, or more nearly relevant, than evidence of other like crimes against others,[10] today's decision conflicts with the square holding in Knox:
The evidence here of the subsequent incident was not relevant to prove appellant's intent, motive, absence of mistake, modus operandi, or any other element of the crime charged. Its only relevance was to show appellant's propensity to commit the crime, which is clearly improper. Banks v. State, 298 So.2d 543 (Fla. 1 DCA 1974); Harris v. State, 183 So.2d 291 (Fla. 2 DCA 1966); Hooper v. State, 115 So.2d 769 (Fla. 3 DCA 1959).
This statement is hardly "language . . beyond the holding of the case," as suggested by the majority opinion. I think the members of that panel of this court knew what they intended to hold, and expressed themselves accordingly; it is not for another panel to redecide that case and choose another ground of decision, however much they may disagree with the decision denounced. If Knox is wrong it should be squarely overruled.
In my opinion Knox represents a disciplined application of Williams, and its holding  that the other-crimes-same-victim evidence was "not relevant to prove appellant's intent, motive, absence of mistake, modus operandi, or any other element of the crime charged"[11]  is far more sound than some contrary decisions which intone the same litany of possible relevancies in reaching a contrary result.[12] I confess I am not at all sure that Williams' unyielding bar of other-crimes evidence, proving propensity alone, should stand in prosecutions like this, not involving identity issues, for sex offenses against children.[13] It may be that *1154 the nature of the offense and the usual difficulties of proving it can justify propensity evidence against the long-honored policy excluding it. Nevertheless, if the possible exception is immediately to be permitted to swallow the rule, and "pattern of criminality" or propensity evidence is to be welcomed in prosecutions for any sex offense, indeed "for any type of crime", I stand foursquare with Knox in this and all such cases, and I therefore dissent.
NOTES
[1] Information dated May 23, 1977:

"... did unlawfully and knowingly commit a lewd or lascivious act on Valerie Cotita, a child of the age of five years, by fondling and/or placing his mouth upon her vagina, but without the intent to commit Involuntary Sexual Battery, in violation of Florida Statute 800.04."
[2] 110 So.2d 654 (Fla. 1959), cert. denied 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[3] Id. at 661, 662:

"[T]he rule is consistently announced that whether the evidence tends to exculpate or convict, if it is relevant; that is, if it bears a certain relation to the crime charged to the extent that it is relevant to a fact in issue, such evidence is admissible.
* * * * * *
"If found to be relevant for any purpose save that of showing bad character or propensity, then it should be admitted." (emphasis theirs)
[4] Transcript of Record, pp. 67, 78.
[5] Although there is no clear objection to this testimony on the record, defendant contends it was covered by a standing, but unreported, objection made at the beginning of trial, which was referred to on page 115 of the transcript.
[6] The State proffered a receipt of the transaction with defendant's mother wherein Mrs. Bolton agreed she "will not in the future press any charges against Phillip Cotita."

In an abundance of caution, to prevent the Bolton incident from becoming a "feature" of the trial, the trial court disallowed this evidence.
[7] Williams v. State, 110 So.2d 654, 662 (Fla. 1959).
[8] 160 Fla. 593, 36 So.2d 201 (1948).
[9] 110 So.2d at 659.
[10] Stone, The Rule of Exclusion of Similar Fact Evidence: America, 51 Harv.L.Rev. 988, 989 (1938).
[11] Id. at 1004.
[12] Id. at 1006.
[13] Id. at 1012.
[14] Id. at 1016.
[15] Franklin v. State, 229 So.2d 892, 894 (Fla. 3d DCA 1969); McCormick, Evidence § 190 at 447 (1972 Ed.): "[T]he range of relevancy outside the ban is almost infinite."
[16] SAME VICTIM: Clark v. State, 266 So.2d 687 (Fla. 1st DCA 1972), cert. denied 270 So.2d 21 (Fla. 1972), incest conviction affirmed and evidence of prior sexual relations between father and daughter properly allowed; Newsome v. State, 355 So.2d 483 (Fla. 2nd DCA 1978), evidence of prior rape of same victim properly admitted in trial for burglary and assault with intent to commit a felony, as relevant to show intent to commit sexual battery; Whiteman v. State, 343 So.2d 1340 (Fla. 2nd DCA 1977), cert. denied 353 So.2d 681 (Fla. 1977), conviction of sexual battery by uncle/guardian against niece/ward, age 17, upheld where evidence showed sexual relations beginning when victim was age 9; Summit v. State, 285 So.2d 670 (Fla. 3d DCA 1973), prior lewd assaults against victim and her sister held properly admitted and conviction affirmed; Gossett v. State, 191 So.2d 281 (Fla. 2nd DCA 1966), convictions of assault and rape of children affirmed where evidence admitted of former sex acts on same victim showing pattern of criminality.
[17] DIFFERENT VICTIM: Wilson v. State, 330 So.2d 457 (Fla. 1976), conviction of rape affirmed where extensive testimony allowed of separate collateral crime showing pattern of similar conduct; Alford v. State, 307 So.2d 433 (Fla. 1975), cert. denied 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976), affirming conviction of rape and murder and holding evidence of defendant's attempted homosexual act shortly prior to commission of rape was properly admitted; Dean v. State, 277 So.2d 13 (Fla. 1973), affirming rape conviction and upholding admission of testimony of four other rape victims showing system or general pattern of criminality; Williams v. State, 110 So.2d 654 (Fla. 1959), cert. denied 361 U.S. 847 (1959), rape conviction affirmed and evidence of prior aborted attempt on another similar victim properly allowed; Talley v. State, 160 Fla. 593, 36 So.2d 201 (1948), rape conviction affirmed where five other women testified as to defendant's approach which was similar to that of victim of the crime charged; Nathey v. State, 275 So.2d 589 (Fla. 1st DCA 1973), cert. denied 279 So.2d 881 (Fla. 1973), conviction of rape of defendant's 11-year-old daughter upheld despite admission of evidence of sex offenses by defendant against three other daughters; Pendleton v. State, 348 So.2d 1206 (Fla. 4th DCA 1977), conviction of sexual battery affirmed and testimony of two other women similarly attacked by defendant properly admitted to "corroborate" testimony of victim; Summit v. State, 285 So.2d 670 (Fla. 3d DCA 1973), prior lewd assaults against both the victim and her sister held properly admitted in trial under Florida Statute § 800.04; Cantrell v. State, 193 So.2d 444 (Fla. 2nd DCA 1966), prior lewd assaults against two similar victims properly admitted; Ross v. State, 112 So.2d 69 (Fla. 3d DCA 1959), conviction of lewd and lascivious assault against 11-year-old girl upheld and evidence of prior similar acts against another similar victim properly admitted.
[18] In general, evidence of prior sex offenses against the same victim of the sex offense charged is permitted by "nearly all courts." Underhill, Criminal Evidence, § 212 at 647, and cases cited therein; 22A CJS, Criminal Law, § 691(29), (31) at 876, 879.
[19] 117 So.2d 473 (Fla. 1960).
[20] Stone, The Rule of Exclusion of Similar Fact Evidence: England, 46 Harv.L.Rev. 954, 984 (1933):

"This wide divergence [in circumstances of each case] explains the failure of all attempts to create categories of admissibility. Mitigation of the evil must be sought in other directions ...
* * * * * *
"[T]he trial judge should be recognized to have a discretion to decide whether the probative weight of the proffered evidence outweighs its mere prejudice .. . Appellate courts should hesitate to establish rules pertaining to discretion of the tribunal which really has the situation before it."
[1] See Knox v. State, fn. 9 infra; Dodson v. State, 334 So.2d 305 (Fla. 1st DCA 1976), cert. den. 341 So.2d 1081 (Fla. 1976); Section 90.404(2)(a), Florida Statutes (1977); In Re: Florida Evidence Code, 372 So.2d 1369 (Fla. 1979); Fed.R.Evid. 404(b); Uniform R.Evid. 55, 9A U.L.A. 629 (1965); McCormick on Evidence, Section 190 at 447 et seq. (2d ed. 1972); 1 Jones on Evidence, Section 4:12 et seq. (1972); 1 Wharton's Criminal Evidence, Section 241 et seq. (13th ed. 1972); 2 Louisell and Mueller, Federal Evidence, Section 140 at 113 et seq. (1978); 1 Underhill Criminal Evidence, Section 205 et seq. (6th ed. 1973); Slough, Other Vices, Other Crimes: Kansas Statutes Annotated Section 60-455 Revisited, 26 Kan.L.Rev. 161 (1978).
[2] J. Stone, The Rule of Exclusion of Similar Fact Evidence: America, 51 Harv.L.Rev. 988, 989 (1938), (hereafter cited as Stone: America). See also J. Stone, The Rule of Exclusion of Similar Fact Evidence: England, 46 Harv. L. Rev. 954 (1933) (hereafter Stone: England).
[3] 1 Wigmore, Evidence, Section 194 at 646 (3d ed. 1940):

It may almost be said that it is because of this indubitable Relevancy of such [character] evidence that it is excluded. It is objectionable, not because it has no appreciably probative value, but because it has too much.
See also 1 Jones on Evidence, Section 4:18 at 418 (6th ed. 1972); McCormick on Evidence, Section 190 at 447 (2d ed. 1972); 1 Underhill, Criminal Evidence, Section 205 at 447 (5th ed. 1956); 2 Louisell and Mueller, Federal Evidence, Section 140 at 113 (1978).
[4] Stone, America, 51 Harv.L.Rev. at 1032-33 (author's emphasis).
[5] Stone, England, 46 Harv.L.Rev. at 959, quoting Phillips, Law of Evidence (1st ed.) 69-70; Stone, America, 51 Harv.L.Rev. at 1031.
[6] 135 Ill. 401, 25 N.E. 764 (1890).
[7] Stone, America, 51 Harv.L.Rev. at 1012 (author's emphasis).
[8] Id. at n. 130. To the same effect, see Alford v. State, 307 So.2d 433 (Fla. 1975), in which the Supreme Court approved similar-fact evidence, in a rape prosecution, of an unfulfilled homosexual act one hour earlier, as tending to show, among other things, the accused's state of mind and motive for rape.
[9] 361 So.2d 799 (Fla. 1st DCA 1978). The other crime evidenced in Knox was after, not before, the crime charged. That distinction is insignificant. E.g., Smith v. State 365 So.2d 704 (Fla. 1978).
[10] 1 Underhill's Criminal Evidence, Section 212 at 647 (6th ed.):

Some courts depart sharply from the general rule which bars the use of other offenses to prove the defendant's propensity or disposition and permit the introduction in sex cases of evidence of other sex offenses in order to show the defendant's propensity... . Other courts refuse evidence of other sex offenses which involve different victims or partners, but nearly all courts permit evidence of other sex offenses which involve the same person as the offense on trial, the theory being that the evidence shows the defendant's lustful attitude toward that person.
[11] 361 So.2d at 800.
[12] 2 Louisell and Mueller, Federal Evidence, Sec. 140 at 114:

[N]othing is so common as to see recitations of whole catalogues of permissive uses for such evidence, with little analysis.
[13] See Comment, Defining Standards for Determining the Admissibility of Evidence of Other Sex Offenses, 25 U.C.L.A.L.Rev. 261, 288-89 (1977):

In such cases [where identity in its traditional sense is not in issue], the critical question for the jury is not whether the wrong person has been charged, but whether the prosecuting witness has fabricated the incident. If the evidence presented on this issue were limited to the victim's testimony, as implicitly denied by the defendant's plea of not guilty, then the jury would have little basis for assessing credibility. This undesirable situation may be remedied where the accused has committed a similar offense, under similar circumstances, and in the same proximate time period of the offense charged. If the prosecution can show that defendant recently engaged in similar unlawful conduct, it is much less likely that the victim invented the incident... .
On the other hand, where the prosecuting witness is not acquainted with the accused, the critical question for the jury is likely not to be whether the victim's testimony is fabricated, but whether there has been a mistake in identification. If the requisite standard for admissibility were merely the presence of common characteristics ..., there would be a great danger that the defendant had been arbitrarily singled out solely on the basis of his police file and the specific crime in question. Such evidence would have little probative value on the issue of identity because the similarities between defendant's past conduct and the charged crime could easily be coincidental. Moreover, the inherent prejudicial nature would substantially increase the probability of a conviction. This risk of an erroneous conviction is minimized by requiring the existence of striking similarities between the charged offense and the proffered evidence (the higher standard). [emphasis by the author, footnotes omitted]
The quoted comment discusses People v. Kazee, 47 Cal. App.3d 593, 121 Cal. Rptr. 221 (Ct. App. 1975). See also People v. Covert, 249 Cal. App.2d 81, 57 Cal. Rptr. 220 (Ct.App. 1967); People v. Rincon-Pineda, 14 Cal.3d 864, 123 Cal. Rptr. 119, 538 P.2d 247 (1975); People v. Thomas, 20 Cal.3d 457, 143 Cal. Rptr. 215, 573 P.2d 433 (1978); People v. Haslouer, 79 Cal. App.3d 818, 145 Cal. Rptr. 234 (Ct.App. 1978). Cf. Coburn v. California State Personnel Bd. 83 Cal. App.3d 801, 148 Cal. Rptr. 134 (Ct.App. 1978) (noncriminal case).