407 So.2d 300 (1981)
Herbert ESPEY, Appellant,
v.
STATE of Florida, Appellee.
No. 80-254.
District Court of Appeal of Florida, Fourth District.
December 14, 1981.
Richard L. Jorandby, Public Defender, and Tatjana Ostapoff, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, for appellee.
LETTS, Chief Judge.
This appeal results from a conviction for sexual battery upon a seven year old granddaughter, the accused claiming that the admission of evidence as to his proclivity for coerced oral, anal and vaginal intercourse, use of pornographic materials, bestiality and lesbianism either with, or among, his five other children and housepet, was erroneous. We affirm.
The sole issue is whether evidence of these collateral crimes was admissible under *301 the so called "Williams Rule," see Williams v. State, 110 So.2d 654 (Fla. 1959), cert. den. 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). The law laid down in Williams predicates the admission of the evidence on whether it has legal relevance, i.e. whether it tends to prove any of the issues properly before the trial court. "The test of admissibility is relevancy. The test of inadmissibility is a lack of relevancy." Id. at 660.
We begin by recapitulating some of the facts of the controlling Williams case in which the victim parked her car during the evening at a shopping plaza and returned to discover a man hiding in the back seat who later claimed he thought it was his brother's car in which he wanted to take a nap. Also admitted in evidence was the testimony of another crime victim who testified that she also had parked her car in the same parking lot at the same hour some six weeks earlier and had returned to find the same defendant hiding in the back seat, resulting in the same explanation of napping in an automobile which he thought belonged to his brother. Based on this similarity of events, our Supreme Court held in part:
[G]enerally it is harmful to admit evidence of collateral crimes "independent of an unconnected with" the crime charged. The decision then announces that "to this general rule" there are several distinct exceptions, among which are evidence which is a part of the res gestae or tends to establish identity, or when necessary to an intelligent account of the crime... . These exceptions include any evidence that will tend to prove criminal intent, guilty knowledge, purpose, plan or design or such as would tend to show that the act charged was not the result of accident, mistake or inadvertence or was aimed to prevent the defense otherwise opened to the accused. Id. at 661.
Although it is the law of this State, we will be the first to concede that the Williams rule has often been stretched too far and that even Williams itself is somewhat amorphous. After all, it is a standard police warning that people should look on the floor of the back seat of their cars before entering and it is a frequent explanation by an intruder that he mistook the vehicle for another. Nonetheless we find several aspects of this case which make the disputed testimony relevant to intent and a common scheme or plan, as laid down in Williams.
These collateral crimes mostly began with beguiling affection, fondling, viewing of pornographic materials and home nude photography followed by the actual sexual batteries, all committed under the same roof exclusively with his own children and grandchildren, both male and female. These ghastly sessions were always concluded with threats of knifings and beatings if ever the children revealed the goings-on. The attacks on each child were also timed to coincide with their most tender years, between the ages of seven, when most of the attacks would begin, through the end of puberty whom most of them would cease. To us, all this certainly is relevant to demonstrate a unique common scheme or plan to systematically ravage and deflower the helpless young members of his own household.
This brings us to a discussion of the recent case of Cotita v. State, 381 So.2d 1146 (Fla. 1st DCA 1980) cert. denied 392 So.2d 1373 (Fla. 1981) in which the court held, in a split decision, that evidence of prior illicit sex crimes with other neighborhood children was relevant to establish whether the accused had committed a lewd or lascivious act upon his own five year old daughter. If the Cotita decision is correct, and we believe it may be under Williams, then a fortiori our conclusion here must be likewise, for in Cotita there were other eyewitnesses and the crimes were not in such great profusion or all committed in the same house against the accused's own children.
Examining next the pungent and forceful dissent by Judge Smith in Cotita, we are impressed with the obvious truth that the admission of other-crimes evidence, carried with it an inescapable demonstration of "... bad character and criminal sexual propensities which for 150 years have been the cause for restricting its use." Id. at 1152. *302 However, most of Judge Smith's most cogent arguments would appear to us to apply to Williams itself and certainly we need not disobey the message of Williams, so long as it continues to be the law laid down by our Supreme Court. Where the issue is whether a grandfather has committed a sexual battery on his grandchild, evidence that he committed at least a score more on five other young members of his family, in the same location, in the same manner continuously over an eighteen year period, suggests something much more than bad character or propensity to commit similar criminal acts. In fact it fits the most recent update of Williams by the Supreme Court rendered in Drake v. State, 400 So.2d 1217 (Fla. 1981), where it was said that in order for the evidence to be legally relevant, the identifiable points of similarity "must have some special character or be so unusual as to point to the defendant." Id. at 1219. We find many identifiable points of similarity here and a level of uniqueness pointing towards the defendant which is thankfully beyond our prior knowledge or experience. See also Jones v. State, 398 So.2d 987 (Fla. 4th DCA 1981).
We conclude with a reference to State v. Rush, 399 So.2d 527 (Fla.2d DCA 1981), in which the Second District empathized with Circuit Judge Harry C. Parham and called for a change in the law in child molestation cases so that similar fact evidence will be more readily admissible. It goes without saying that we find such a change unnecessary to support our conclusion here; however, we also join with our brothers in the Second District in expressing concern about the difficulty in otherwise proving deviant sex acts perpetrated upon children. Where a seven year old is the only eyewitness the jury might well find the testimony incredible, as if coming from a deranged fanciful child unable to perceive the true gravity and dire consequences of her accusations.
AFFIRMED.
MOORE and BERANEK, JJ., concur.