NESBITT, Judge.
Bruce Lazarowicz appeals his conviction for sexual battery of a child by a person in a position of familial authority. See §§ 794.011, 794.041, Fla.Stat. (1985). This sexual battery was alleged to have been committed against Lazarowicz’s daughter, Jennifer, on December 6, 1985, when she was seventeen years old. Jennifer testified that when she asked her father’s permission to attend a school trade fair with a male acquaintance, her father denied her request, forced her to engage in sexual intercourse, and then rescinded his refusal. Because we agree with the defendant that the trial court erroneously admitted hearsay testimony as to statements made by Jennifer prior to trial which were consistent with her in-court testimony but in fact were made after the existence of factors indicating the possibility of improper motive on her part, we reverse and remand for a new trial.
The defense was based in part on a claim that Jennifer had an improper motive for accusing her father. The defense claimed that Jennifer fabricated her charges of sexual battery so that her father would no longer be in a position to prevent her from maintaining a sexually active relationship with her boyfriend. The fact said to indicate the motive, Jennifer’s desire to maintain her sexual relationship with her boyfriend, took place when she first engaged in sexual intercourse with the boyfriend. According to Jennifer’s testimony, this occurred one week before she reported her father to the authorities.
Section 90.801(2)(b), Florida Statutes (1985), sets forth the following exception to the general rule against admissibility of hearsay evidence:
A statement is not hearsay if the de-clarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is:
[[Image here]]
Consistent with his testimony and is offered to rebut an express or implied charge against him of improper influence, motive, or recent fabrication....
However, section 90.801(2)(b) permits the admission of only prior consistent statements made before the existence of the facts said to indicate an improper influence. *394 See Bianchi v. State, 528 So.2d 1309 (Fla. 2d DCA 1988); Preston v. State, 470 So.2d 836 (Fla. 2d DCA 1985); McElveen v. State, 415 So.2d 746 (Fla. 1st DCA 1982); see also Jackson v. State, 498 So.2d 906 (Fla.1986); Brown v. State, 344 So.2d 641 (Fla. 2d DCA 1977).
Jennifer’s prior consistent statements admitted at the trial through other witnesses regarding the sexual battery do not come within the foregoing exception because all of her out-of-court statements occurred after Jennifer first became sexually intimate with her boyfriend; in other words, these statements occurred after Jennifer had a motive for feasibly fabricating the charges. Accordingly, those statements were inadmissible under the statute.
Virtually every witness who testified for the state was permitted to testify as to prior consistent statements made by Jennifer. These witnesses’ hearsay testimony improperly corroborated Jennifer’s trial testimony. See Van Gallon v. State, 50 So.2d 882 (Fla.1951); Holliday v. State, 389 So.2d 679 (Fla. 3d DCA 1980); Allison v. State, 162 So.2d 922 (Fla. 1st DCA 1964).
The trial judge gave various reasons for admitting evidence of Jennifer’s prior consistent statements. See State v. Palmore, 510 So.2d 1152 (Fla. 3d DCA 1987) (evidence inadmissible for one purpose may be admissible for another purpose). The statements made to her sister and a friend were admitted to establish Jennifer’s state of mind. See § 90.803(3), Fla.Stat. (1985). In the instant sexual battery prosecution, Jennifer’s state of mind was not an issue in the case, and therefore her prior consistent statements were not admissible under section 90.803(3). See Kingery v. State, 523 So.2d 1199 (Fla. 1st DCA 1988); Wells v. State, 492 So.2d 712 (Fla. 1st DCA), review denied, 501 So.2d 1283 (Fla.1986).
Jennifer’s out-of-court statements to her boyfriend and stepmother were admitted based on the trial judge’s ruling that the witnesses could testify as to the fact that Jennifer had reported her father’s sexual activity, but they could not testify as to the details of her report. The trial court reasoned: “The simple fact that communication was had or to whom it was had is not of necessity hearsay.” Clearly, however, the fact that Jennifer told someone else that her father had engaged in sexual activity with her was itself an out-of-court statement that was, under these circumstances, inadmissible.
The trial judge allowed the nurse who examined Jennifer after the alleged offense to testify concerning Jennifer’s pri- or consistent statements based upon the prosecutor’s proffer that the statements were made during a medical interview. Section 90.803(4), Florida Statutes (1985), does provide an exception to the hearsay rule for statements made for purposes of medical diagnosis or treatment; however, for a statement to be admissible under this exception there must be a showing: (a) that the statements were made for the purposes of diagnosis or treatment; and (b) that the individual making the statements knew the statements were being made for this purpose. Begley v. State, 483 So.2d 70 (Fla. 4th DCA 1986). The record in this case is devoid of any such showing. Accordingly, Jennifer’s prior consistent statements to the nurse should not have been admitted, see Hanson v. State, 508 So.2d 780 (Fla. 4th DCA 1987); Begley, 483 So.2d at 70, although these statements may be admissible on retrial if a purpose pertinent to diagnosis or treatment is demonstrated.
We conclude that the erroneous admission of Jennifer’s prior consistent statements requires reversal. The state did not attempt to support the defendant’s conviction under a harmless error analysis. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986), our supreme court held:
The harmless error test, as set forth in Chapman and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction. See Chapman, 386 U.S. at 24, 87 S.Ct. at 828. Application of the *395 test requires not only a close examination of the permissible evidence on which the jury could have legitimately relied, but an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict.
In the present case the defendant contended that his daughter fabricated the allegations against him so that he could not disrupt her active sexual relationship with her boyfriend. Determining Jennifer’s credibility was one of the crucial functions of this jury. The above parade of witnesses might well have given credence to Jennifer’s testimony. Consequently, we cannot say beyond a reasonable doubt that the erroneous admission of the bolstered testimony did not contribute to the verdict. State v. DiGuilio, 491 So.2d at 1135. The crucial decision which the jury had to make was whether to believe Jennifer’s testimony or that of her father. No one else who testified at the trial witnessed the alleged offense. There was no physical evidence supporting her testimony, and no incriminating statements were made by her father. With this credibility determination at the heart of the trial, the improper admission of statements bolstering Jennifer’s testimony constituted serious error necessitating reversal.
We cannot, however, agree with the two remaining points of error claimed by the defense. First, Bruce Lazarowicz claims that it was error for the trial court to admit “similar fact” evidence over defense objection because prior incidents of sexual misconduct with the victim were irrelevant and offered solely to show his bad character and propensity, contrary to section 90.404, Florida Statutes (1987), which codified the holding in Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
We point out that the Williams rule is not a rule of exclusion but rather is a rule of admissibility. Any fact relevant to prove a fact in issue is admissible into evidence even though it points to a separate crime unless its admissibility is precluded by a specific rule of exclusion. See Heiney v. State, 447 So.2d 210 (Fla.), cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984). Applying this test, we find that the collateral crime evidence was relevant and admissible. It was relevant to the issues of motive, intent, and modus operandi for the subsequent crime and to establish the “entire context” of the crime charged. Id. at 214.
Jennifer testified that she had been sexually battered by her father in Michigan on January 27, 1985. On that date, her stepmother, who was suffering complications from the delivery of Jennifer’s stepsister, remained overnight in a hospital intensive care unit. That evening, Jennifer was awakened by the sound of her father calling out to her. She went into her father’s bedroom and discovered him upset due to his wife’s condition. Her father asked her to stay with him until he fell asleep. She fell asleep sitting on the edge of the bed. When she awoke, she was lying on her back, her clothes had been removed, and her father was on top of her. Her father then forced her to engage in sexual intercourse with him.
Next, Jennifer testified about an instance of uncharged sexual misconduct which she claimed occurred in Key West, Florida on October 5, 1985. Jennifer had made plans to go to a school dance with her boyfriend. When her father discovered her plan, he became upset and refused to let her go. Her father took her into his bedroom and told her, “You know what you have to do to be able to go,” and then he forced her to kiss his genital area.
We find that Jennifer’s testimony as to prior similar sexual acts committed against her by her father was admissible to show both the existence of a particular relationship between the two and the fact that the charged crime was not an isolated incident. See Padgett v. State, 551 So.2d 1259 (Fla. 5th DCA 1989); Smith v. State, 538 So.2d 66 (Fla. 1st DCA 1989); Gibbs v. State, 394 So.2d 231 (Fla. 1st DCA) (existence of defendant’s lustful attitude towards his stepdaughter, proven by prior sexual assaults, made it more likely or probable that the defendant possessed a similar state of mind toward his stepdaughter on date of alleged *396 offense and such was relevancy beyond mere propensity), aff'd, 406 So.2d 1113 (Fla.1981); Whiteman v. State, 343 So.2d 1340 (Fla. 2d DCA), cert. denied, 353 So.2d 681 (Fla.1977) (admissible in prosecution under section 794.011 as relevant to manner in which defendant exercised his parental authority over victim); Summit v. State, 285 So.2d 670 (Fla. 3d DCA 1973) (admissible to show character of defendant as to motive and intent); § 90.404(2), Fla. Stat. (1985).
In Gibbs, the court observed that evidence of similar sex acts against the victim in the case being tried is far less subject to objection than evidence of similar acts against other victims. Prior sex acts against the same victim shows, as the much cited authority Julius Stone states, the defendant’s “lust toward the girl with whose rape he is charged, only one step removed from the main issue, namely whether he indulged that lust.” Gibbs, 394 So.2d at 232; see Cotita v. State, 381 So.2d 1146, 1151 (Fla. 1st DCA 1980) (Smith, Jr., J. dissenting) (citing works of Professor Stone), review denied, 392 So.2d 1373 (Fla.1981). The court in Sampson v. State, 541 So.2d 733 (Fla. 1st DCA 1989), although questioning whether the victim’s testimony as to defendant’s prior sexual attacks was admissible to corroborate her testimony as to the charged offense, nonetheless held that evidence to be admissible as relevant. Proof of other sex crimes has been traditionally deemed admissible in prosecutions involving the same parties. See McCormick on Evidence § 190, (3d ed. 1984).
Here, the father’s conduct, allegedly withholding parental permission until certain sexual acts were performed, and his use of the familial relationship to achieve advantage over his daughter demonstrate the necessary relevance. This evidence did not become a feature of the trial. Further, the evidence in this case does not conflict with the standard enunciated in Heuring v. State, 513 So.2d 122, 124 (Fla.1987): “The charged and collateral offenses must be not only strikingly similar but they must also share some unique characteristic or combination of characteristics which sets them apart from other offenses.” See Buenoano v. State, 527 So.2d 194 (Fla.1988). Therefore, we conclude that the probative value of the objected to evidence outweighed the prejudice to the defendant; thus that testimony was properly admitted.
Second, we conclude that the trial court did not err in allowing the admission of testimony as to uncharged acts of physical violence by Bruce Lazarowicz upon Jennifer and her sisters. When the prosecutor had finished questioning Jennifer concerning uncharged sexual misconduct, she commenced eliciting testimony from Jennifer concerning uncharged acts of physical violence. Jennifer testified that her father, suspecting her of having sexual relations with her boyfriend, “punched me, knocked my head into the wall, threw me around the room, took me in the bedroom and laid me on the bed and punched me in the face, kicked me, gave me a black eye, put bruises over my other eye.” Jennifer claimed that he called her a “slut” and a “whore” and that every time he walked by her he would punch her in the face.
Jennifer’s sister, Eve, also testified at trial concerning uncharged acts of physical violence. Eve stated that her father hit her to get her to admit that Jennifer’s boyfriend had been at the house with Jennifer. Eve then described her father’s beating of Jennifer, stating that her father “smacked” Jennifer in the face, threw her against the wall, and punched her in the stomach.
The trial judge admitted this evidence of uncharged acts of physical violence because it was “connected to familial authority exercised by the father over that witness.” The defense maintains that “familial authority” was only material in the present case insofar as an essential element of the offense charged was that the defendant was “a person who stands in a position of familial or custodial authority” to the alleged victim. § 794.041(2), Fla. Stat. (1985). It claims this element is established by proving, as the state did at trial, that the defendant is the father of the alleged victim. Therefore, the defense argued testimony of uncharged acts of physi *397 cal violence should not have been admitted. We disagree.
The evidence of uncharged physical violence was properly admitted as it was relevant to prove the defendant’s familial authority over Jennifer and to explain Jennifer’s behavior during the entire time period. Again, the test for the admissibility of evidence of these collateral crimes was relevance. See Heiney v. State, 447 So.2d at 213; see also Trees By and Through Trees v. K-Mart Corp., 467 So.2d 401 (Fla. 4th DCA), review denied, 479 So.2d 119 (Fla.1985). Evidence of prior instances of abuse may be relevant as to whether there was a continuing pattern of abuse by appellant of familial, custodial, or parental authority. Coleman v. State, 485 So.2d 1342, 1344 (Fla. 1st DCA 1986); see also Calloway v. State, 520 So.2d 665 (Fla. 1st DCA), review denied, 529 So.2d 693 (Fla.1988); Ehrhardt, Florida Evidence § 404.9 (2d ed. 1984).
In the instant case, the incidents complained of were relevant to put the entire relationship between Jennifer and her father into perspective. This is particularly true where Jennifer had to explain why she did not report her father’s activities to anyone. See Smith v. State, 365 So.2d 704 (Fla.1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979); Ashley v. State, 265 So.2d 685 (Fla.1972). Testimony as to these activities was limited and was not made a feature of the trial, but rather was necessary to a full understanding of the relationship of the parties. Therefore, we conclude no error occurred in this regard.
Accordingly, this case is reversed and remanded for further proceedings consistent with this opinion.